Michael LEE, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 12765.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 4, 1956.

Decided March 15, 1956.

Mr. David F. Smith, Washington, D. C., for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Victor Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Lee, the appellant, was charged in a two count indictment with housebreaking in violation of § 22–1801, D.C.Code 1951, and grand larceny, in violation of § 22–2201, D.C.Code 1951. He was acquitted of housebreaking and convicted of grand larceny, followed by a sentence of imprisonment of 40 months to 10 years. On appeal he contends certain evidence used against him on the trial was obtained by an illegal search and seizure and accordingly was erroneously admitted to his prejudice.[1]

He was charged with stealing four shotguns and three rifles. The facts are somewhat complicated, involving transactions and associations of the accused with a Mrs. Neff, from whom the guns apparently were stolen, and with one Leighton Williams, a friend of hers. These associations and transactions revolved around the proposed purchase by

---

1. There is no question about the timeliness and adequacy of the defendant's motions to suppress the evidence. See Rule 41(e), Fed.R.Crim.P., 18 U.S.C.A.

Mrs. Neff from Lee of a certain restaurant. The parties were together at Mrs. Neff's premises the evening of the alleged theft. The next morning she discovered the guns were missing.

The police were notified. Several days later, about midnight, the police received word from "a reliable source" that Lee had attempted to sell several guns, that he had one in the back of his automobile, and that the guns were those stolen from the home of Mrs. Neff. Captain Shiman of the Metropolitan Police Department, in the company of another officer, proceeded almost immediately to Lee's apartment. At first they were unable to arouse anyone. They went away and returned with a third officer about two hours later. There were some differences in the testimony as to whether Lee had the door open when they returned or just what were the circumstances surrounding their entry into the apartment. In any event, although they did not use force, they carried with them such compulsion of authority that the subsequent search cannot be said to have been with the acquiescence of Lee. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649. After the officers had gained entry Captain Shiman asked Lee if he had any shotguns in the apartment. He replied, "Yes." He was asked to show them, and said, "It is in the closet." A shotgun, in a case, was found by one of the officers in a closet. The officers identified it as belonging to Mrs. Neff. A .22 caliber rifle also was recovered from the apartment, and a little later a shotgun also recognized by the police as belonging to Mrs. Neff was recovered from the trunk of Lee's car, which was parked near his apartment. The officers had no arrest warrant or search warrant.

A motion to suppress the guns as evidence because allegedly seized unlawfully by the officers was the subject of a hearing before trial, and was denied. The motion was renewed when the case was called for trial, followed by another hearing. It was again denied, and the guns were admitted in evidence.

■ In support of the refusal of the court to suppress the evidence the United States contends that the search and seizure were incident to a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. It is argued that the arrest was lawful because the officers had probable cause to know that a felony had been committed and, based on the tip, that Lee had committed it. But we do not reach that question because the search and seizure were not in reality incident to the arrest. The testimony shows that the search and seizure preceded the arrest, and that the officers intended by the entry and search to secure evidence upon which to predicate the subsequent arrest. Captain Shiman, who was in charge, was asked if he had placed Lee under arrest. Replying that he had, he stated, "Before we left, I said, 'I am going to take you in and charge you with these guns, unless you can explain them'." He also said, "He was arrested when the guns were produced, as soon as we identified the guns." Officer Sears, who accompanied Captain Shiman, when asked whether he had placed Lee under arrest replied affirmatively, adding, "We had to take him down as a result of these guns being here * * *."[2] All this testimony shows that the guns were seized before the arrest, and that the arrest in fact was caused by the discovery of the guns. The police had gone to appellant's apartment with the purpose of checking on the tip from the "reliable source" that the guns were there, and upon verifying that tip they arrested appellant. A number of courts have held in similar circumstances that such a search is not incident to the ar-

---

2. This officer created some doubt by later stating that Lee was arrested before the officers saw the shotguns, but upon being pressed he said, "It just depends upon when you determine he was actually placed under arrest," and he twice refused to say Captain Shiman erred in testifying that Lee was arrested after the guns were identified. A reading of all the testimony leaves a conviction that Captain Shiman correctly described what occurred.

rest, but rather the arrest is in truth incident to the search. United States v. Pollack, D.C.D.N.J., 64 F.Supp. 554, 558; United States v. Sully, D.C.S.D.N.Y., 56 F.Supp. 942; Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420; Cf. McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977; United States v. McCunn, D.C.S.D.N.Y., 40 F.2d 295; United States v. Setaro, D.C.D. Conn., 37 F.2d 134. And of course the search cannot be justified by what it turned up. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520.

 Since there was no arrest to which the search and seizure were incident, and since there was no search warrant, the search and the seizure of the guns were unlawful under the Fourth Amendment to the Constitution of the United States,[3] for there were no circumstances which could justify dispensing with the necessity for a search warrant. Assuming, without deciding, that the informer's tip would have given the police probable cause to support an arrest without a warrant, this did not constitute "exceptional circumstances" which supported the search or seizure without a search warrant. It must be said of this case, as the Supreme Court said of United States v. Jeffers, 342 U.S. 48, 51, 52, 72 S.Ct. 93, 95, 96 L.Ed. 59, which arose a few years ago in this jurisdiction:

"The Fourth Amendment prohibits both unreasonable searches and unreasonable seizures, and its protection extends to both 'houses' and 'effects.' Over and again this Court has emphasized that the mandate of the Amendment requires adherence to judicial processes. See Weeks v. United States, 232 U.S.

383, [34 S.Ct. 341, 58 L.Ed. 652, (1914)]; Agnello v. United States, 269 U.S. 20, [46 S.Ct. 4, 70 L.Ed. 145 (1925)]. Only where incident to a valid arrest, United States v. Rabinowitz, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653 (1950)], or in 'exceptional circumstances,' Johnson v. United States, 333 U.S. 10, [68 S. Ct. 367, 92 L.Ed. 436 (1948)] may an exemption lie, and then the burden is on those seeking the exemption to show the need for it, McDonald v. United States, 335 U.S. 451, 456, [69 S.Ct. 191, 93 L.Ed. 153 (1948)]. In so doing the Amendment does not place an unduly oppressive weight on law enforcement officers but merely interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended. Johnson v. United States, supra. * * *

"* * * There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized. In fact, the officers admit they could have easily prevented any such destruction or removal by merely guarding the door."[4]

See, also, McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153; Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436; cf. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

 The taking of the gun from the trunk of the car is not justified by the fact that a car is a movable vehicle; for the taking here was a direct consequence of the occurrences in the apartment

---

3. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV.

4. No such admission was sought or made in the case at bar, but the fact is obvious.

shortly before. Accordingly, it also should have been excluded from the evidence. And since we cannot agree with the contention of the United States that there was a waiver of the erroneous admission of this material evidence, a new trial is required. It has long been settled that evidence obtained in violation of the Fourth Amendment is inadmissible against one whose home—here Lee's apartment—has been the subject of the violation.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.