Ella Mae **WORK**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 13241.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 30, 1956.

Decided April 22, 1957.

Petition for Rehearing In Banc Denied May 16, 1957.

Mr. E. Barrett Prettyman, Jr., Washington, D. C. (appointed by the Court), for appellant.

Mr. Richard J. Snider, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty. Lewis Carroll and Victor Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

■ Trial by jury having been waived, appellant was convicted by a District Judge on the second count of an indictment for violation of 35 Stat. 614 (1909), as amended, 21 U.S.C. § 174 (1952), 21 U.S.C.A. § 174, concealing narcotics known to have been illegally imported.

Before trial she moved under Rule 41 (e), Fed.Rules Crim.Proc., 18 U.S.C., for the suppression as evidence of a phial containing pills. The motion was denied, and the phial and contents were admitted in evidence as a material part of the proof against her. The circumstances in which these articles came into the possession of the United States are not in dispute: Two officers went to appellant's dwelling place [1] after receiving information that a young girl known to them to be a prostitute and drug addict was using narcotics there. They obtained no warrant of arrest or search warrant; and it is not claimed that when they first went to the house they had cause to make an arrest or a search without a warrant. They knocked on the door. Receiving no answer they opened the door and took "a few steps" into the first floor hallway.[2] Appellant then walked past the officers, making some comment about the open door. She went out the front door through which they had entered, walked a few feet across a porch, down a few steps, and turned there down another step or two to an area under the porch. There she was seen by the officers, who had followed her, to make motions as if putting something in a trash can located under the porch. But they saw nothing in her hand. Shortly thereafter one of the officers lifted the top of the trash can and took out the phial containing the pills in question.

However well intentioned, the entry into the home without a warrant of any kind was not under "exceptional circumstances" dispensing with the necessity for a warrant.[3] Accordingly, it was the beginning of an unreasonable search:

"* * * Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. * * *" Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145.

See also, United States v. Jeffers,[4] 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; and Lee v. United States, 98 U.S.App.D.C.

---

1. At the hearing on the motion to suppress, counsel for the United States advised the court that defendant, appellant, was the owner of the premises. Though some rooms were occupied by others than appellant the building was nevertheless her private home.

2. The place the officers entered is referred to in some of their testimony and in the brief of the United States as a foyer; but from the testimony as a whole we think it clear the place was the inside hall, an integral part of appellant's home. It was not a public or semi-public lobby or entrance.

3. See Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436.

4. In Jeffers, a key was used to unlock the door, but it can make no difference in law that in the present case the door was opened without a key. In neither case was there permission to enter. There are restrictions upon the manner of entry even when the officer is armed with a search warrant. 18 U.S.C. § 3109 (1952), recently discussed in Woods v. United States, 99 U.S.App.D.C. 351, 240 F.2d 37.

97, 232 F.2d 354. Both the Agnello and Jeffers cases involved the seizure of contraband narcotics. This did not deter the Supreme Court from making effective the protection of the Fourth Amendment against unreasonable search and seizure. Indeed, Jeffers explicitly rejects the effort there made to exempt contraband from the rule excluding evidence obtained in violation of the rights of an accused person under the Amendment.

Assuming that appellant placed the phial where it was found it would be unacceptably naive to conclude that this attempt by her to hide it immediately following the presence of the officers in the hall, and that the finding of the phial by the officers, were not direct consequences of their unlawful entry. The phial accordingly could not be used in evidence. Johnson v. United States, supra; Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690; Lee v. United States, supra; cf. Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789. We need not decide whether the officers would have obtained the phial independently of their illegal entry, since the circumstances show that the seizure was a direct consequence of the search which began with the entry which did occur. An imaginary case postulated upon what might have happened if there had been no illegal entry is not before us.

We should add that the search and seizure were not incident to a valid arrest which would have made it reasonable without the necessity for a search warrant. In fact there was no arrest at all preceding the search and seizure. See United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210; Johnson v. United States, supra.[5]

None of the cases relied upon by the United States involved a situation where the original entry, initiating a search and leading to the securing of the evidence, was, as here, an illegal entry into a private dwelling. In Lee v. United States, 95 U.S.App.D.C. 156, 221 F.2d 29, there was no entry; in McQuaid v. United States, 91 U.S.App.D.C. 229, 198 F.2d 987, certiorari denied, 344 U.S. 929, 73 S.Ct. 499, 97 L.Ed. 715, and Fisher v. United States, 92 U.S.App.D.C. 247, 205 F.2d 702, the entry was into the public part of a store; in Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476, the evidence sought to be suppressed was secured before entry was made.

The articles seized in the present case had not been abandoned either "to the open fields," as was done in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 446, 68 L.Ed. 898, or otherwise abandoned so as to lose the protection of the home provided by the Fourth Amendment, however mean the home. The trash receptacle in which the phial was found was in close proximity to the house. It was an adjunct to the domestic use of the home by appellant. It was within the curtilage or "general enclosure surrounding the dwelling." Care v. United States, 10 Cir., 231 F.2d 22, 25. See Walker v. United States, 5 Cir., 225 F.2d 447, 449; Wakkuri v. United States, 6 Cir., 67 F.2d 844; Childers v. Commonwealth, 198 Ky. 848, 250 S.W. 106. A photograph of the lower half of the premises,[6] when viewed in light of the evidence, shows that the receptacle was under the stone porch or stoop constituting a part of the house itself. That the receptacle might have been partially visible from the street is immaterial. We point out, however, that no evidence indicates that it was visible from the street. The placing of the phial in this receptacle, so situated and used, is not to be construed as an abandonment of the phial unless to persons impliedly or expressly authorized to remove the recep-

5. In Gibson v. United States, 80 U.S.App. D.C. 81, 149 F.2d 381, Gibson's own privacy protected by the Fourth Amendment had not been invaded, as the contraband was seized in the house of a co-defendant.

6. This photograph was made a part of the record on appeal by stipulation between counsel.

tacle's contents, such as the trashmen, for purposes of destruction. In the alleged circumstances of this case there could not be said to be an abandonment even to those persons; there was, rather, a hiding.

The phial and its contents should have been suppressed as evidence against appellant in response to the motion under Rule 41(e).[7]

We do not consider other questions raised on the appeal.

Reversed and remanded.

BURGER, Circuit Judge (dissenting).

I dissent because I do not find in this record an *unreasonable* search and seizure prohibited by the Constitution. Reasonableness is determined neither by a piecemeal examination of the facts nor by application of rigid formulas; the question must be resolved upon an appraisal of "the total atmosphere of the case." United States v. Rabinowitz, 1950, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653. I do not believe it is unreasonable for narcotic agents, making a call on the appellant's premises for the purpose of investigating the reported use of narcotics by one of her tenants, while there to remove the lid of a trash can located outside the home, after the agents had observed appellant leave the house and surreptitiously cast something into the can in circumstances which excited their suspicions. On the contrary, the failure of the agents to have followed this course once their suspicions were aroused would amount to a dereliction of duty on their part.

The Fourth Amendment was designed to safeguard the individual's right of privacy in his home[1] and in his personal effects against arbitrary intrusion by government officials. I cannot find a fundamental constitutional right to privacy in the garbage or trash pail of a rooming house where the receptacle is located out of doors in sight from the street and where there is an admitted constant invitation to the public authorities of the District to remove the contents as refuse. If the trash collector or District sanitary inspector had observed the "throwing motion" and promptly retrieved the contraband narcotics, I doubt anyone would seriously contend that an illegal search and seizure had occurred or that the narcotics could be suppressed as evidence.[2] Yet the majority would require one narcotic agent to stand guard over the garbage can while his colleague, if he has one handy, attempts to go downtown to secure a search warrant.[3]

---

7. In United States v. Jeffers, supra, 342 U.S. at page 51, 72 S.Ct. at page 95, the Supreme Court said:
"* * * the Amendment does not place an unduly oppressive weight on law enforcement officers but merely interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended. * * *."

1. 1 Cooley, Constitutional Limitations 610–15 (8th ed. 1927). Courts have construed the Fourth Amendment reference to "houses" as including not only dwellings but other structures used as places of business. See, e. g., Gouled v. United States, 1921, 255 U.S. 298, 305, 41 S.Ct. 261, 65 L.Ed. 647. But the distinction between such buildings and the areas surrounding them "is as old as the common law." Hester v. United States, 1924, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898.

2. The majority says, "placing of the phial [of narcotics] in this receptacle * * * is not to be construed as an abandonment of the phial unless to persons impliedly or expressly authorized to remove the receptacle's contents, such as the trashmen, for purposes of destruction." In other words, this court is saying that as to the District of Columbia trashmen the narcotics were *abandoned* but as to the District of Columbia narcotic squad they were *concealed* and thereby rendered subject to suppression in a criminal prosecution. It seems to me that the very act of placing the package in the garbage, trash or refuse pail is an act of abandonment and I would not have any different or special rule for narcotics.

3. In United States v. Rabinowitz, 1950, 339 U.S. 56, 85, 70 S.Ct. 430, 444, Justice Frankfurter's dissent points out that "It is most relevant that the officers had 'no

To me the search and seizure does not become "unreasonable" merely because the *sight* of agents in the vestibule of the rooming house [4] induced appellant, a previously convicted narcotic violator, to make a hasty disposal of incriminating evidence. It was not an unlawful or indeed any *search* which "produced" appellant's action; it was the *sight* of the two callers, whom her experienced eye detected to be narcotic agents, which caused fear and panic, and there is no reason to believe her reaction would have been different had she seen the officers approaching her from the public sidewalk rather than from the vestibule of her rooming house.

If, as the majority contends, it was *the entry into the vestibule* which invalidated the subsequent seizure, it would follow logically that the conduct of the officers would taint any subsequent seizure of the narcotics. Thus had appellant discarded the narcotics in the center of the street or in a neighbor's yard or in a neighbor's garbage pail, all in full public view, the majority theory would render any seizure of the narcotics "unlawful." I am not prepared to join in reducing law enforcement restraints to that absurdity. This novel theory in operation does several things: (a) it runs counter to the Supreme Court's "open field" abandonment doctrine; (b) it circumscribes the range of law enforcement within a subjective test of the *accused's motives* in discarding the narcotics. The accused's reactions to the acts of the officers thus operate to immobilize all significant law enforcement efforts in the immediate situation.

We must not forget that the articles here seized were not private papers or ordinary personal effects, but *narcotics,* which, in the absence of stamps or other lawful permit, a citizen cannot lawfully own or possess; moreover, they were not seized in a home but in an outdoor garbage pail. The difference in the degree of protection afforded private property *rightfully* possessed and articles such as counterfeit money, stolen goods, and customs contraband, in whose regulation or destruction the public has a legitimate interest, has been emphasized time and time again by the Supreme Court.[5] See, e. g., Boyd v. United States, 1886, 116 U.S. 616, 623–624, 6 S.Ct. 524, 29 L.Ed. 746; Carroll v. United States, 1925, 267 U.S. 132, 149–153, 45 S.Ct. 280, 69 L.Ed. 543; Harris v. United States, 1947, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399. While the distinction is not sufficient to sanction an invasion of the right to personal privacy in the home, it is a persuasive factor to me in considering whether an individual's right of privacy renders unreasonable the removal of narcotics from a garbage or trash can situated outside the house in view of the public way and constantly open and available to the public trash collector.

---

excuse for not getting a search warrant.'" Here there is excuse for not doing so.

4. The majority glosses over the fact that this was a rooming house. After receiving no response to their knocking, the officers opened the unlocked outer door and stepped into a front hall or vestibule used by appellant, her roomers, and evidently any person calling on such roomers. That some form of tacit consent to enter this common way did exist is indicated by the fact that when appellant came out of her apartment she did not challenge the two strangers or in any way object to their presence. While I would not read appellant's failure to question the presence of the officers as an affirmative invitation or consent, I see it as an acknowledgment that the vestibule was a semi-public entryway where those who might call on tenants or roomers had a right to be.

5. Congress has also recognized that narcotics traffic requires a stricter degree of regulation than that of other contraband. In passing the Narcotic Control Act of July 18, 1956, c. 629, 70 Stat. 567, Congress increased generally the mandatory minimum and permissive maximum sentences for narcotic offenses and provided that the jury could direct the *death* penalty for one convicted of selling heroin to juveniles. 70 Stat. 571, 21 U.S.C.A. § 176b. See also 1956 U.S.Code Cong. & Ad.News, pp. 3274–3322.

If it is not considered unreasonable to seize without warrants contraband in public shops,[6] on the public way,[7] or, after a search without a warrant of a private vehicle,[8] as has been held, I am not willing to say as a matter of law that this seizure of narcotics from the trash can is so unreasonable as to warrant reversing the District Court's conclusion. If it is reasonable for federal officers to follow a car into the owner's garage, located "a few feet back of his residence and within the curtilage," open the trunk of the car without a warrant and without the consent of the owner, and seize the liquor found therein, it ought to be reasonable for narcotic agents on a routine police investigation to follow appellant to a trash can and seize narcotics found therein when they have reason to believe she threw them there. Scher v. United States, 1938, 305 U.S. 251, 253, 59 S.Ct. 174, 83 L.Ed. 151. The officers' actions in both the Scher and the instant case can be justified "upon what they saw and heard—what took place in their presence." Scher v. United States, supra, 305 U.S. at page 254, 59 S.Ct. at page 176.

Honest citizens neither need nor, I think, want protection for their privacy extended to these artificial limits, and a presently confessed, previously convicted narcotics violator is not entitled to it. Of course the guilty should have the same protective safeguards as the innocent and I would afford them as much. But I refuse to join in what I consider an unfortunate trend of judicial decisions in this field which strain and stretch to give the guilty, not the same, but vastly more protection than the law-abiding citizen.[9] In this balancing of rights of the individual and the whole

public, which is admittedly a delicate process, society's vital stake too often is overlooked for reasons which I cannot justify as essential for the preservation of our important fundamental rights.

Mr. Justice Holmes' observation [10] that "there is more danger that criminals will escape justice than that they will be subjected to tyranny" applies to a case like this.

6. Fisher v. United States, 1953, 92 U.S. App.D.C. 247, 205 F.2d 702.

7. Lee v. United States, 1954, 95 U.S.App. D.C. 156, 221 F.2d 29.

8. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

9. Mr. Justice Jackson remarked: "That the rule of exclusion and reversal results

in the escape of guilty persons is more capable of demonstration than that it deters invasions of right by the police." Irvine v. People of State of California, 1954, 347 U.S. 128, 136, 74 S.Ct. 381, 385, 98 L.Ed. 561.

10. Kepner v. United States, 1904, 195 U.S. 100, 134, 24 S.Ct. 797, at page 806, 49 L.Ed. 114, (dissent).