Michael Potter, J.
(dissenting). Two of the defendants, McErlean and Callahan, were charged with misdemeanors under section 3305 of the Public Health Law and sections 1747-d and 1751-a of the Penal Law, namely, with the unlawful possession of heroin and various implements used in the subcutaneous injection thereof. The scene of the alleged crimes was a shop where one O’Donnell, an acquaintence of theirs, was employed. O’Donnell as an employee had a key to the premises. However in the instance in question, he gained entrance to the shop after business hours, in the owner’s absence, and without his permission. He admitted the defendants to the premises.
The contraband, namely, the implements mentioned and certain glassine envelopes either containing heroin or showing traces of it, were discovered on shelving and behind a box or case. The defendants were standing about seven feet distant from the prohibited items. Neither heroin nor implements were found on their person.
It is true that there was some cause for suspicion. The arms of the defendants revealed marks that might be ascribed to hypodermic injections. This the police elicited during their search conducted at the premises. This search preceded the arrest. Moreover, the police observed McErlean climb up a shelved partition and place something on the top of it.
Upon trial, the prosecution primarily relied upon purported admissions made by the defendants after arrest, to the effect that they had bought narcotics before going to the premises investigated, with the intention of using the drugs there. But these admissions by themselves are worthless, unless the prearrest search and seizure were reasonable, thereby opening the way for acceptance of the evidence so procured.
The majority of the court finds that the search and seizure at issue were reasonable and proper as incident to the subsequent arrest in furtherance of necessary crime prevention, and that the fruits or yield of the search may, therefore, be received in evidence without violating the injunctions against unreasonable searches and seizures implicit in the Fourth Amendment to the Federal Constitution, made applicable to the States through the Fourteenth Amendment. I cannot endorse this view. So to stretch the meaning of “ incident” is to disregard its normal, *642 legal usage and significance when applied to a misdemeanor case. A search and seizure incident to an arrest for a misdemeanor denotes a search and seizure after the arrest and not before it. (People v. O’Connor, 257 N. Y. 473; People v. Yarmosh, 11 N Y 2d 397, 400; People v. Moore, 11 N Y 2d 271; People v. Loria, 10 N Y 2d 368; United States v. Di Re, 332 U. S. 581; Agnello v. United States, 269 U. S. 20; Lee v. United States, 232 F. 2d 354, 355-356.)
Though the police were admitted to the premises without having to break in, yet the case is devoid of proof that any consent was given for the search that ensued. Hence, there was no waiver of the rights secured by the Fourth Amendment (People v. Loria, supra, p. 373; United States v. Shules, 65 F. 2d 780, 781; United States v. MacLeod, 207 F. 2d 853, 855; United States v. Dornblut, 261 F. 2d 949, 951, cert, denied 360 U. S. 912; United States v. Sclafani, 265 F. 2d 408 414 — 415, cert. denied 360 U. S. 918; United States v. Burgos, 269 F. 2d 763, cert, denied 362 U. S. 942; United States v. Martin, 176 F. Supp. 262, 266).
Plainly, the arrest of McErlean and Callahan awaited a chance discovery; and so it was, for what was found was the product of the general search made without benefit of warrant (People v. Moore, supra, p. 273).
Nor can the general search here be justified by what was found (People v. O’Neill, 11 N Y 2d 148, 153; People v. Loria, supra, p. 373; United States v. Di Re, supra, p. 595; Byars v. United States, 273 U. S. 28, 29; Johnson v. United States, 333 U. S. 10; McDonald v. United States, 335 U. S. 451; Henry v. United States, 361 U. S. 98; United States v. Walker, 246 F. 2d 519, 525; Leo v. United States, supra, p. 355).
, Nor may the police have testified as to what they observed during the general search (People v. O’Neill, supra, pp. 153, 154; Williams v. United States, 263 F. 2d 487, 488, 489; McGinnis v. United States, 227 F. 2d 598, 603).
Nor may the police have shown that some of the objects found during such search came to their attention as the result of the defendant McErlean’s attempt to secrete or dispose of them (People v. Loria, supra, p. 372; Hobson v. United States, 226 F. 2d 890; Work v. United States, 243 F. 2d 660).
There are necessitous or extraordinary circumstances when a search warrant may be dispensed with and the search may precede the arrest (Brinegar v. United States, 338 U. S. 160; Johnson v. United States, supra, pp. 14-15; McDonald v. United States, supra, pp. 454-455; Husty v. United States, 282 U. S. 694; Accarino v. United States, 179 F. 2d 456, 458).
*643 It is also to be noted that there is some decisional law holding or implying’ that an exceptional set of circumstances.indicating probable cause may validate a prearrest search and seizure lest form usurp substance (People v. Jones, 232 N. Y. S. 2d 18; People v. Simon, 45 Cal. 2d 645). Jones follows the principles set forth in Simon, a California case which reflects the established law of that State, namely, that a legal search may occur prior to a technical arrest if there is reasonable cause to arrest the individual whose person or premises are searched. (See, also, Willson v. Superior Court, 46 Cal. 2d 291, 294 [1956].) However, as a general rule, the Federal decisions apparently demand that a technical arrest, without a warrant, should come before the search (Johnson v. United States, supra, pp. 15-17; United States v. Rabinowitz, 339 U. S. 56, 60. See Colling, “ Toward Workable Rules of Search and Seizure — An Amicus Curiae Brief ”, 50 Cal. L. Rev. 441 [1960]).
In attempting to reconcile search and seizure cases, there is the ever-pressing fear that the exception instead of proving the general rule, may well obliterate it. In my opinion, it would be hazardous to apply any of the exceptions to the case under consideration. We are dealing with misdemeanors. Here the grounds for arrest, without a warrant, are statutory. Crimes of this grade must be perpetrated in the officer’s presence before he may make such an arrest (Code Crim. Pro., § 177; People v. Moore, 11 N Y 2d 271, 273; People v. Yarmosh, 11 N Y 2d 397, 400; Johnson v. United States, supra, p. 15; Carroll v. United States, 267 U. S. 132, 156-157; Kurtz v. Moffitt, 115 U. S. 487; Elk v. United States, 177 U. S. 529). To conclude otherwise would make the arrest incident to the search rather than the search incident to the arrest (Agnello v. United States, supra; United States v. Di Re, supra; Lee v. United States, supra). To couch the matter in another form, the People cannot at the same time justify the arrest by the search and justify the search by the arrest (Johnson v. United States, supra, pp. 16-17). If the foregoing be valid, it might cogently be asked: Upon eliminating the fruits of the prearrest search in the instant case, what grounds remain to support the arrest?
Before Mapp v. Ohio (367 U. S. 643), where the police erred in their quest for evidence, their search, though unreasonable, might still be condoned and the evidence so educed, if pertinent, received on the ground that its source was not the court’s concern (People v. Defore, 242 N. Y. 13, cert, denied 270 U. S. 657; People v. Adams, 176 N. Y. 351, affd. 192 U. S. 585); but since Mapp, an unreasonable search completely corrupts the fruits thereof, putting them beyond all use (People v. Moore, supra; People v. *644 O’Neill, supra; People v. Loria, supra; cf. People v. Dinan, 11 N Y 2d 350); for a search unreasonable at the beginning remains unreasonable to the end (United States v. Di Re, supra, p. 595; Byars v. United States, supra, p. 29).
Nor can we excuse the police action in the case before us by terming it crime prevention (United States v. Di Re, supra, p. 595), since the instant acts went beyond a limited, prearrest inquiry to ascertain the identity of those suspected and to receive their explanation for their presence at the premises in question (People v. Cassone, 35 Misc 2d 699). A temperate inquiry would not have invaded their constitutional rights (see People v. Bell, 306 N. Y. 110, construing Penal Law, § 1990-a, subd. 2). However, the inquiry passed into an unbridled and exploratory prearrest search, the product of which led to the arrest. Hence, to hold the search good is to pardon the evils springing out of a general prearrest drive for evidence and thereby to debase the Fourth Amendment which condemns any form of unreasonable inquisition whether it be directed towards a misdemeanor involving a minor crime or towards conduct most flagitious.
Particularly apposite is the following excerpt from Mr. Justice Frankfurter’s dissent in United States v. Rabinowitz (339 U. S. 56, 82): “ By the Bill of Rights the founders of this country subordinated police action to legal restraints, not in order to convenience the guilty but to protect the innocent. Nor did they provide that only the innocent may appeal to these safeguards.” (See, also, McDonald v. United States, 335 U. S. 451, 453; Henry v. United States, 361 U. S. 98, 104.)
In view of the foregoing, the respective motions of the defendants McErlean and Callahan to suppress the evidence seized as well as for their acquittal should be granted.
The additional cases before us respectively charge the defendants McErlean, Callahan and Colucci with the misdemeanor of unlawful entry into the premises mentioned with the intent to commit a crime, under section 405 of the Penal Law.
Considering the conclusion reached by me in the foregoing-case against McErlean and Callahan relating to possession of the contraband seized, it appears to me that the proof against them and Colucci on the present charge of unlawful entry is decidedly weak. As already observed, they were admitted to the premises by O ’Donnell, who was then employed at that place by the owner of the business conducted there. O’Donnell possessed some vestige of right to enter the premises, for his employer had given him a key for that purpose. Whatever strength may be found in the instant cases is drawn solely from the circumstance that O’Donnell exceeded his authority by *645 entering the premises after business hours, in his employer’s absence and without the latter’s permission. This he evidently had no right to do; but in any event, the proof is lacking that the defendants entered the shop with the avowed purpose of committing a crime against O’Donnell’s employer. Nor has any other criminal intent been proven, if ive exclude the contraband illegally found and seized as evidence. In the absence of the essential mens rea, the cases against McErlean, Callahan and Colucci must fall (People v. Calloway, 297 N. Y. 931; People v. Orr, 270 N. Y. 193; People v. Cooperman, 279 N. Y. 599; People v. Mantin, 184 App. Div. 767; People v. Schaffel, 286 App. Div. 1034, affd. 1 N Y 2d 716; People v. Harris, 285 App. Div. 813; People v. Di Vito 276 App. Div. 781; People v. Derby, 275 App. Div. 655).
It might be added that though the defendants were O’Donnell’s invitees, yet it appears that they might have been held for unlawful intrusion on real property (Penal Law, § 2036; Adams v. Schwartz, 137 App. Div. 230, 234; 3 Burdick, Law of Crime, § 720, p. 72). However, here too, a criminal mind and purpose must accompany the act (People v. Stevens, 109 N. Y. 159; Johnson v. May, 189 App. Div. 196, 200-202; People v. Winig, 7 Misc 2d 803, 804; People v. Leiby, 184 Misc. 21). At any rate, the People chose to try them solely for the crime of unlawful entry.
Undoubtedly, all of the defendants committed a tort, namely, a trespass; but that is a civil matter.
In this state of the record, I am constrained to vote for the acquittal of the defendants. Accordingly, the respective motions of the defendants McErlean, Callahan and Colucci for acquittal should be granted.
Gray, J., concurs with Creel, P. J.; Potter, J., dissents in opinion.