**UNITED STATES of America**

v.

**Wayne Doyle COSTNER and Clayton Williamson.**

**Crim. No. 6664.**

United States District Court
E. D. Tennessee,
Northeastern Division.

May 10, 1963.

J. H. Reddy, U. S. Atty., Chattanooga, David Smith, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

John Dugger, Morristown, Tenn., for defendants.

NEESE, District Judge.

Agents of the Alcohol and Tobacco Tax Division, Internal Revenue Service, Department of the Treasury, had an unlawful distillery under surveillance in the Dark Hollow section of Cocke County, Tennessee, on November 19, 1962. The surveillance was being conducted from across a river by means of binoculars, cameras, high-powered glasses and other such devices. The distillery was located near the Dark Hollow Road about seven-tenths of a mile from its intersection with the Willow Springs Road.

Agent Lawhorn saw through field glasses a 1955 Buick automobile parked about 30 yards from the site of the distillery on a road which passed below the distillery. This vehicle was yellow with a white top. Sugar was unloaded from this vehicle and carried into the distillery site, according to the testimony of witnesses for the prosecution, and an unidentified object or substance was loaded from the distillery into the Buick car. No other vehicle was observed in the area while the government agents watched.

Mr. Lawhorn left his initial position, after arranging with other agents to notify him by radio when the automobile under observation left the scene, and took up the new position with another agent. This new position was in an automobile parked on Willow Springs Road about one-half mile from the aforesaid intersection.

At about 9:45 o'clock, p. m., Agent Lawhorn was notified that the Buick automobile was leaving the distillery area. He could not see the departing automobile as it left the region of the distillery nor as it traversed Dark Hollow Road; nor could he see this suspected vehicle, if at all, until it had entered the intersection and turned left onto Willow Springs Road. However, the agents did see *an* automobile make the above entry and turn and proceed along Willow Springs Road and the Cosby Highway. The investigators pursued this vehicle from a distance of about a quarter-of-a-mile (and sometimes as much as a half-a-mile). They could not identify the driver of the pursued vehicle, nor could they ascertain the number of passengers therein. They were unable to determine the make, color or license plates number of the vehicle they were following. Indeed, all they could see of the vehicle ahead any time during the pursuit was its taillight.

As the pursuit progressed, the government agents passed a certain residence at an estimated speed of from 55 to 60 miles per hour. As they passed, Agent Lawhorn saw in the back yard of the premises " * * * the same Buick I had seen earlier * * * " at the distillery site. Whether it was, in fact, the same vehicle, this automobile was parked about 30 feet in front of the door to a smokehouse on the residential premises. The headlights of the car were burning. Neither of the passing officers at this time recognized any person in or near the vehicle, and neither was able to see any license plate numbers thereon.

 Nevertheless, after turning their car around and returning to the residential premises, these officers went on the premises, conducted a search and made arrests of the defendants without either a search warrant or warrant of arrest.[1] The Court cannot accord the

1. The Court should clarify here the law which governs arrests by federal officers without a warrant in Tennessee. In United States v. Cook, D.C.Tenn. (1962), 213 F.Supp. 568, 572[10], this Court cited T.C.A. § 40–803 as the basis for this procedure. The Court overlooked in the former opinion the 1958 federal statute governing arrests without a warrant by agents of the Alcohol and Tobacco Tax Division, Internal Revenue Service, Department of the Treasury, 26 U.S.C. § 7608. This statute first came to the Court's attention in a review of authorities in this case. Thus, 26 U.S.C. § 7608, rather than T.C.A. § 40–803, should be understood as governing arrests by federal officers without a warrant in Tennessee. It is only in the absence of any federal statute setting the standard to ap-

positive testimony of the ATU investigator Lawhorn the weight it must have to constitute evidentiary proof that the automobile he had observed earlier at the distillery was the *same* car he searched and seized on someone's private property afterward. There is too great a margin for error in his presumption. No defendant should ever be convicted on mere suspicion or conjecture.

The government attorney relies on the leading case of Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, as authority for the reasonableness of this search and seizure, and the Court was inclined toward the validity of the search during the oral hearing on the motion. On more mature consideration, however, the Court is now of the firm opinion that the officers made an unlawful entry onto the premises searched and, however well-grounded may have been their suspicions, the search and seizure were unreasonable. There was abundant opportunity for the investigators to have obtained a search warrant and have proceeded in an orderly, judicial way. Taylor v. United States (1932), 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, 953, cited in Trupiano v. United States (1948), 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, 1671.

As was well said in Trupiano, supra, " * * * (W)hen the agents of the Alcohol Tax Unit decided to dispense with a search warrant and to take matters into their own hands, they did precisely what the Fourth Amendment was designed to outlaw. Uninhibited by any limitations that might have been contained in a warrant, they descended upon [the defendants in a night] raid. Nothing circumscribed their activities on that raid except their own good senses, which the authors of the Amendment deemed insufficient to justify a search or seizure except in exceptional circumstances not here present." (In the instant case they searched thoroughly and somewhat destructively the parked vehicle as well as a smokehouse in which they concluded, summarily, were cases containing glass jars, which jars not only contained illegal whiskey, but illegal whiskey on which the proper tax had not been paid.) "The fact that they actually seized only contraband property, which doubtless would have been described in a warrant had one been issued, does not detract from the illegality of the seizure. * * *" Trupiano v. United States, supra, 68 S.Ct. 1229, 1233, 92 L.Ed. 1663, 1670.

Had there been a search of this automobile on the public highway, unmaliciously and with probable cause, when the pursued vehicle was moving rapidly, the result might be different. Carroll v. United States, supra. But, here a whole battery of investigators, armed with all manner of devices to assist them, had every opportunity to obtain prior authorization for what they afterward did without such authorization. They made an unlawful entry of private premises and a search of the curtilage. Baxter v. United States, C.A. 6th (1951), 188 F.2d 119, 120. One of the defendants was a part-time resident, at least, of the premises invaded, and there is no suggestion that his co-defendant was there improperly. Both defendants, accordingly, are entitled to question the legality of these searches.

" * * * No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. * * *" Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 734, 4 L.Ed. 2d 697, 706[11]. When officers search

---

ply in testing the legality of an arrest, at the time of an arrest, that resort is had to the law of the place of arrest. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. However, this

more recent statute does not change or limit former authorities on the subject. United States v. Murphy, C.A.3rd, (1961), 290 F.2d 573, 575.

without a warrant incident to a valid arrest or in exceptional circumstances, the burden is then on the prosecution invoking the exception to produce facts to justify it. Weaver v. United States, C.A. 5th (1961), 295 F.2d 360, 361. (See also Lee v. United States (1956), 98 U.S.App.D.C. 97, 232 F.2d 354 where seizures of stolen guns were invalidated where officers who, even though acting on reliable information [as the officers in the case at bar were not], searched the apartment and automobile of the defendant without search or arrest warrants.) The prosecution simply has not carried the burden of justifying the actions of the officers here.

The defendants point defensively to the requirement of Rule 41, Federal Rules of Criminal Procedure, that search warrants must be served in the daytime unless the affidavits on which same are issued are positive that the property to be sought for seizure is on the person of, or in the place to be searched. Supra, subsection (c). The observation is made that language of the Supreme Court of the United States indicates that the adoption of this Rule, supra, negates any search on probable cause without a warrant in the nighttime. The Court did comment that said Rule 41(c) " * * * is hardly compatible with a principle that a search without a warrant can be based merely upon probable cause. * * * " Jones v. United States (1958), 357 U.S. 493, 78 S.Ct. 1253, 1257, 2 L.Ed. 2d 1514, 1519. That opinion, however, dealt with the search of a private home in the nighttime.

The prosecuting attorney would justify the search and arrest without a warrant on the premise that the officers who first saw the yellow and white-topped Buick used in the conveyance of materials and equipment in connection with the operation of the illegal distillery could then and there "officially seize" the vehicle and afterward go on private premises to search the automobile, which by then had been forfeited to the federal government, and arrest the defendants for possessing the contraband they found in the vehicle as a result of the search thus made. The most beneficent reaction this Court can express as to that theory is to adopt the following apposite language of Mr. Justice Douglas, to wit: " * * * We do not stop to examine that syllogism for flaws. Assuming its correctness, we reject the result. * * * " McDonald v. United States (1948), 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, 157.

From all which the Court finds and concludes that the evidence of the federal agents with reference to the contraband found in the automobile and smokehouse was obtained by means of an unlawful search and is inadmissible against these defendants.

Counsel for the defendants will submit immediately an order not inconsistent with the views here suppressing such evidence.