436 P.2d 595

**STATE of Arizona, Appellee,**

v.

**Edward Lee MICHAEL, Jr., Appellant.**

No. 1683.

Supreme Court of Arizona,
In Banc.

Feb. 1, 1968.

Shortly after midnight on July 6, 1965, the deceased, Florence Michael who was the wife of defendant, was shot to death through the left cheek by a .22 caliber bullet in the bedroom of the Michaels' home in Scottsdale. Defendant had returned to the bedroom for the night about one-half hour before decedent was shot, and at the time of the shooting defendant and the deceased were alone in the bedroom. Four other persons were in the house at the time, including defendant's grandmother, father, and two teenage sons. Defendant's father testified that he saw the deceased alive in the house some four minutes before the shooting. During the course of events following the shooting, defendant, on separate occasions stated to two police officers that he had shot his wife. However, at the trial he denied making the statements, and claimed a complete lack of knowledge as to how the shooting took place. Defendant also admitted placing the .22 pistol, along with another pistol, under the bed sometime before the shooting occurred.

Defendant and his wife had had marital troubles in the past. She had recently returned to the family home in Scottsdale from an extended stay in Louisiana where she had been with the two sons for the past year teaching.

Defendant contends that the trial court erred in denying his motion to quash the information on the grounds that the court did not have jurisdiction over the action for the reason he had not been indicted by a grand jury. Defendant argues that the Fifth Amendment to the Constitution of the United States requiring an indictment by a grand jury before a person can be held to answer for a capital crime applies to the States through the Fourteenth Amendment due-process clause of the Federal Constitution.

█ A prosecution of a capital crime by information pursuant to the Arizona Constitution, Article II, Section 30, A.R.S., satisfies the due-process requirement of the Federal Constitution, and the specific por-

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., for appellee.

Walter F. Kessler, Phoenix, for appellant.

McFARLAND, Chief Justice:

Appellant Edward L. Michael, Jr., hereinafter called defendant, was informed against for the crime of murder of an undesignated degree, tried by a jury and convicted of murder of the second degree. The Superior Court of Maricopa County sentenced defendant to the Arizona State Prison for a term of not less than ten years nor more than life. From that conviction and sentence defendant appeals to this Court.

tion of the Fifth Amendment of the Federal Constitution requiring prosecution of capital crimes by indictment by a grand jury is not applicable to the State. State v. Foggy, 101 Ariz. 459, 420 P.2d 934; State v. Berry, 101 Ariz. 310, 420 P.2d 337; State v. McClendon, 101 Ariz. 285, 419 P.2d 69; Fertig v. State, 14 Ariz. 540, 133 P. 99. See also: Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232.

Defendant contends the trial court erred in permitting Police Officer Thomas Star and Police Sergeant David William Townsend to testify in regard to oral statements of defendant for the reason that defendant had not been previously advised of his constitutional rights. Defendant argues that these statements were admitted in violation of the applicable principles in both Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The instant case was tried November 1, 1965, after Escobedo, supra, and before Miranda, supra. In Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the United States Supreme Court held that the Miranda decision was not to be applied retroactively to trials begun before the Miranda decision; hence the instant case is governed only by Escobedo v. State of Illinois, supra.

The first oral admission which defendant contends was erroneously admitted was testified to by Star. Upon reaching defendant's home, Officer Star was immediately met at his patrol car by defendant's father. The officer asked the father, "What happened?" The father said, "My son just shot his wife. I think she is dead." The father and officer then proceeded to the bedroom where the officer saw the deceased, who was obviously wounded, slumped in the chair with blood around the bullet hole in her face. At this time the officer also saw defendant lying on the bed. As the ambulance attendants were moving the deceased's body from the room defendant started to follow them. The officer testified that he took hold of defendant's forearm in an effort to detain him momentarily to ask him a question. When defendant stopped walking, Star released him and asked him, "Where is the gun?" Defendant then stated, "I shot my wife. Is she dead? Please help her." No other persons overheard this particular exchange.

Star admitted that he did not advise defendant of his right to counsel, nor of his right to be silent, nor of his right to know that anything he might say could be used against him before defendant made the above admission. Defendant contends that his constitutionally-guaranteed rights were denied him for the reason that the accusatory stage had been reached under the circumstances within the meaning of Escobedo v. State of Illinois, supra. We agree with the contention.

In State v. Intogna, 101 Ariz. 275, 419 P.2d 59, which, like the instant case, was governed by Escobedo, supra, an officer who was only a block away arrived on the scene shortly after the shooting. He testified that he had reason to believe defendant was in the house, saying

"When I got to the back door of the house itself I opened the door and the Defendant was immediately inside the door. * * * I asked him why he shot, 'Why did you shoot him?' and he stated, 'Because he was threatening me.' And then * * *"

He further testified that he had his gun out at the time. In holding the statement to be inadmissible, we said:

"'We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute con-

stitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as "made obligatory upon the States by the Fourteenth Amendment," Gideon v. Wainwright, 372 U.S. 335, at 342, 83 S.Ct. 792, at 795, 9 L.Ed.2d 799, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.' 378 U.S. at 490, 84 S.Ct. at 1765. * * *

"It is not contended in the instant case that defendant was advised of his rights. The basis of the court's ruling was that the investigation had not reached the accusatory stage. The case at bar was tried before Miranda and the lower court did not have the benefit of this amplification of the meaning of Escobedo. In determining whether the case had passed to the accusatory stage, we must apply the rule in Escobedo, as construed and explained in Miranda. While defendant was not actually arrested when the question was asked as to why he shot deceased, it will be noted from the testimony that Officer Wright had his gun drawn and was within three feet of defendant when he asked the question.

"In Miranda the court said that what was meant by custodial interrogation was questioning initiated by law enforcement officers after a person has been taken into custody. However, the court added: ' * * * or otherwise deprived of his freedom in any significant way * * * ' [Emphasis supplied] Certainly a defendant questioned by an officer with a drawn gun within three feet of him was deprived of his freedom in a significant way. Clearly, the officer had no intention of letting defendant escape and defendant himself could not have reached any other conclusion.

"The officer had stated he went into the house because he believed defendant was there. According to defendant's testimony, he told the officer: ' * * * I am the man you are looking for.'

Then Officer Wright, with his gun drawn, asked the question why he shot Bolen. We are unable to say from these facts that the statement made by defendant was voluntary. It will be noted that while Officer Wright stated he 'grabbed' him after the question was answered, the 'grabbing' of him could hardly be construed as depriving him of his freedom any more than standing within three feet of him with a drawn gun while questioning him."

In State v. Saunders, 102 Ariz. 565, 435 P.2d 39 (November 29, 1967), we said:

"Officer Scully's action in placing his hand on the defendant's arm and leading him outside to the patrol car, under these circumstances was such an infringement of the defendant's 'freedom of action' that it required that the officer fully advise the defendant of his constitutional rights under Miranda before any questions could be asked. Consequently, the trial court's failure to exclude the defendant's inculpatory statement was prejudicial error."

■ The facts in the instant case show that the officer had been informed by defendant's father just before he entered the house that defendant had shot the deceased. Defendant had started to follow the body as it was being removed from the room, but Star took hold of his arm, stopped him and asked, "Where is the gun?" In effect, this was telling defendant that he (defendant) had knowledge of where the gun was that had been used in killing the deceased, which was asking defendant to furnish evidence which would be used against him at the trial. He had not been advised of his rights. Star had stopped defendant while he was following the attendants who were removing the body of the deceased from the room, evidently for the purpose of eliciting incriminatory statements. The question was therefore not just in the investigatory stage, but had begun to focus on defendant as a particular suspect, and had therefore reached the accusatory stage. Under these circum-

stances we are unable to say that the statement of defendant was voluntary.

The next statement of defendant admitted in evidence which was objected to by defendant is found in the testimony of Police Sergeant Townsend who had arrived at defendant's home about one-half hour after the deceased was shot, and was told by Star what defendant's father had stated earlier, and what defendant himself had stated to the officer. In addition, Townsend was shown the two guns and ammunition in the bedroom where the deceased was killed. Townsend then went to the living room and sat down on the couch next to defendant, and asked him to explain what had happened. According to Townsend, defendant's reply was: "My wife walked into the bedroom. She threw a flashlight at me, and I shot her." Townsend admits that he did not in any way warn defendant of his constitutional rights. We have already determined that the accusatory stage had been reached prior to this second oral admission. Shortly thereafter defendant was placed under formal arrest. This second admission by defendant to Townsend was certainly made in response to a question designed to obtain incriminating statements from defendant when defendant did not have the benefit of being properly warned of his right to remain silent. It was therefore not admissible, under Escobedo v. State of Illinois, supra.

Defendant next contends that the trial court erred in admitting testimony of Sergeant Townsend of a third oral admission of defendant. This admission took place in a conversation between defendant and Townsend at the police station during the booking procedure after defendant was advised of his rights. Townsend testified as follows:

"* * * I then asked him if he would try to go over the incident that occurred at the house and explain what had happened.

"And which he advised me that he could not do this, and that his mind was still hazy. He kept using the word 'hazy.'

And that he could just not recall everything and would rather not talk about it at the time.

"I advised Mr. Michael, Junior what he had told me at the house, that his wife had threw a flashlight at him, and that he had shot her, and he looked at me, and he stated 'No, I did not say that, and doesn't matter anyhow, because you cannot get it introduced in evidence.'

"I asked him why I couldn't, and he said, 'I'm an attorney, and I know you can't do this. * * *'"

Before this conversation defendant neither requested nor was denied counsel; and after the conversation, as soon as he requested the opportunity to call his father to obtain legal counsel, the request was granted. However, the conversation containing the third oral admission was improperly admitted by the trial court even though defendant was properly advised of his rights before he made the admission, for the reason that the substance of this conversation was based on defendant's second oral admission made at his house, which was improperly admitted at the trial, and which should have been excluded.

■ The substance of the second oral admission was so inextricably bound up and incorporated in the question which elicited the third oral admission that defendant's answer was tainted to the extent of being rendered inadmissible. The substance of this conversation's question and answer is the direct product of an earlier inadmissible statement. See Smith v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879; United States v. Smith, D.C., 31 F.R.D. 553; and Killough v. United States, 114 U.S.App.D.C. 305, 315 F.2d 241; on remand D.C., 218 F.Supp. 339; reversed 119 U.S.App.D.C. 10, 336 F.2d 929.

■ The trial court's admittance of the three separate oral admissions as treated in this opinion constitutes reversible error, and these admissions must be excluded from the evidence upon the retrial. An accused is deprived of due process of the

law if his conviction is founded in whole or in part on admissions which are involuntary as a matter of law where a defendant's constitutional rights have been violated. See State v. Hudgens, 102 Ariz. 1, 423 P.2d 90.

Defendant contends that the trial court erred in six separate instances in regard to giving to the jury two improper instructions and in refusing to give to the jury four other specific instructions as requested by defendant. The first related to an instruction defining "malice aforethought"; defendant claimed that the trial court's giving of that instruction constituted a comment upon the evidence. An examination of the instruction shows that this contention is not well founded. State v. Schantz, 98 Ariz. 200, 403 P.2d 521; Bennett v. State, 15 Ariz. 58, 136 P. 276; People v. McRoberts, 1 Cal.App. 25, 81 P. 734.

The second instance was in regard to the instruction on manslaughter, in which the jury was instructed that the standards of conduct must be such as also would have aroused the passions of an ordinarily reasonable man if likewise situated. This court has recognized that the reasonable-man test is to be applied in determining if in a sudden quarrel there were sufficient grounds to excite the passions of an accused so as to justify a charge of voluntary manslaughter. State v. Douglas, 2 Ariz.App. 178, 407 P.2d 117. It is proper to so instruct the jury. Hicklin v. Territory, 9 Ariz. 184, 185, 80 P. 340.

Defendant also contends that the court erred in failing to give his requested instruction on circumstantial evidence. The prosecution of this case does not rely solely upon circumstantial evidence, as was the case in State v. Tigue, 95 Ariz. 45, 386 P.2d 402. Nor does it conform to the rule of the law provided in State v. Tigue, supra, and State v. Maynard, 101 Ariz. 239, 418 P.2d 576. The court properly refused to give the requested instruction. Furthermore, in the instant case, the court, in another instruction, properly instructed the jury in regard to the use and the definition of circumstantial evidence.

Defendant complains further that the trial court erred in refusing to give his requested instruction No. 17, which reads as follows:

"The law of the State admonishes you to view with caution the testimony of any witness which purports to relate an oral admission of the Defendant or an oral confession by him."

The trial court properly refused to give that requested instruction for the reason that the matter of the jury's consideration of the credibility of the witness was adequately covered by other instructions which were given. Furthermore, such an instruction, if given, would have come perilously close to being a comment on the evidence.

Defendant also assigns as error the court's refusal to give an instruction on the absence of flight. The court properly refused this instruction, as there was no flight or attempted flight involved in the case, and the jury was properly instructed on the presumption of innocence.

Defendant also assigns as error the trial court's refusal to give defendant's requested instruction No. 27 which reads as follows:

"You are instructed that there is no burden on the Defendant to prove the deceased's death a suicide. The burden is on the State to prove that the death was not a suicide and to prove the guilt of the Defendant beyond a reasonable doubt."

The court properly covered the burden of proof in the case in another instruction.

Where requested instructions are adequately covered by other instructions of the court, as in the instant case, it is not error to refuse them. An examination of the instructions in the instant case shows that they adequately and correctly advised the jury of the law governing the case. State v. Colvin, 81 Ariz. 388, 307 P.2d 98.

Defendant also contends that the trial court improperly allowed the prosecution to cross-examine defendant's father as a hostile witness. A trial court has broad discretion to permit one to cross-examine his own witness upon an adequate showing that the witness was hostile to the party calling him. There can be little doubt that defendant's father was a hostile witness in the instant case. The court did not err in permitting this cross-examination. State v. Lane, 69 Ariz. 236, 211 P.2d 821.

We will not consider defendant's other assignments of error, as they are not likely to re-occur upon the retrial as the circumstances complained of appear only to be the products of that particular trial.

Reversed and remanded.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.