463 P.2d 91

**STATE of Arizona, Appellee,**
**v.**
**Jesus RAMOS, Appellant.**
**No. 2 CA–CR 144.**

Court of Appeals of Arizona.
Division 2.
Dec. 23, 1969.
Review Denied Feb. 24, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Clay G. Diamos, Tucson, for appellant.

KRUCKER, Chief Judge.

Defendant-appellant, Jesus Ramos, was informed against for the crime of possession of heroin. The trial court, sitting without a jury, found him guilty and sentenced him to not less than three nor more than five years. Defendant appeals the judgment of conviction.

Construing the facts in a light most favorable to sustaining the judgment, they are as follows. Mr. Ramos was taken into custody by narcotics officers on May 16, 1968, at about 1:45 a. m., at the Greyhound Bus Depot in Tucson, Arizona. Before being questioned about possession of narcotics, he was given the *Miranda* warnings. Defendant denied possession of any narcotics and was taken to Pima County Hospital where he refused to submit to an examination by a physician. He was then taken to an office in the State Building where one of the narcotics officers asked him to lower his trousers. The defendant complied and after a cursory visual examination by the officer, was informed he was under arrest. He was taken to the county jail and booked. He was not allowed to make a telephone call but was held there until 11:00 a. m. at which time a search warrant was produced. After obtaining the search warrant, the narcotics officers returned defendant to Pima Coun-

ty Hospital where a physician removed from his rectum a prophylactic containing approximately six ounces of heroin. Defendant was taken before a justice of the peace at 1:00 p. m. the same afternoon.

Defendant's pre-trial motion to quash the search warrant and suppress the evidence discovered pursuant thereto was denied. On appeal, he asserts the following grounds for reversal:

(1) There was no probable cause to arrest;

(2) The search warrant and its affidavit did not meet U.S. Constitutional standards;

(3) The magistrate's failure to appoint counsel for defendant at the preliminary hearing violated his right to counsel;

(4) Defendant was detained in violation of the U.S. Constitution, Amendments VI and XIV.

The first question to be answered is whether there was probable cause to arrest defendant. For purposes of this discussion, we refer to the detainment of defendant at the bus depot and not when he was formally charged.[1] We also assume, as does defense counsel, that the only information on which probable cause to arrest could have rested was that given by the same informant. This information is substantially found in the affidavit supporting the request for the search warrant:

"* * * That a confidential reliable informant did see a quantity of heroin in the possession of the above-named person within the last two days and that the contraband is secreted in a body cavity of this person to-wit: the rectum, and that the reliability of said informant has been proven by his previous information that has led to three arrests for narcotics violations and one conviction within the last fourteen (14) months and on several other occasions his information has been confirmed by investigation."

We believe that the officers did have probable cause to arrest the defendant. They had a reliable informant, one whose reliability was not merely assumed but who had previously provided information resulting in three arrests and one conviction, and had at other times aided in investigations. The informant stated he had actually seen the quantity of heroin in the possession of defendant, and defendant admitted he was on his way out of town. We cite our recent case of State v. Hill, 10 Ariz.App. 599, 461 P.2d 168 (Filed November 18, 1969), in which we held a similar eyewitness report of an actual crime gave the officer probable cause to arrest.

We also believe that the officers, on the basis of the information, had the right, incident to a lawful arrest, to conduct the strip search of defendant's person for the specific evidence which they were told could be found. This is the general rule, 79 C.J.S. Searches and Seizures § 69, and in addition to the fact that we do not give retroactive application to Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), see, State v. Bustamante, 11 Ariz.App. 129, 462 P.2d 822 (Filed December 23, 1969), we do not believe this search violates Chimel. The United States Supreme Court, in Chimel, held that in a search incident to an arrest, the arresting officer may seize weapons which could endanger his safety, and evidence on the arrestee to prevent its concealment or destruction.

We do not decide that it would have been equally proper for the narcotics officers to pursue their search of defendant's body cavity by extracting the heroin without a warrant. Instead, we commend them for deeming it necessary to obtain a warrant and enlisting the aid of a physician.

Defendant next contends that the search warrant and its underlying affidavit do not meet the constitutional standards set forth in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964);

---

1. State v. Lopez, 96 Ariz. 169, 393 P.2d 263 (1964); Swetnam v. F. W. Woolworth Co., 83 Ariz. 189, 318 P.2d 364 (1957).

and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In particular, defendant contends that there was no probable cause for the magistrate to believe that defendant had possession of narcotics and that they would be found in his body cavity.

The United States Supreme Court has laid down a two-pronged test for evaluating whether or not probable cause exists to issue a warrant. *Aguilar,* supra; *Spinelli,* supra; McCreary v. Sigler, 406 F.2d 1264 (8th Cir. 1969); State v. Scott, 11 Ariz.App. 68, 461 P.2d 712 (Filed December 2, 1969). The magistrate must be presented with (1) facts showing the informant is reliable and (2) the underlying circumstances on which the substance of the "tip" is made. And, as further clarified in *Spinelli,* supra, the magistrate must generally assure himself that the information is not merely based upon casual rumor or the individual's general reputation.

Applying this test in *Spinelli,* the Supreme Court examined an affidavit which, in its crucial wording, stated:

> "* * * The FBI has been informed by a confidential reliable informant that [defendant] is operating a handbook and accepting wagers * * *." 89 S.Ct. at 588.

The Court held that there was insufficient evidence in the affidavit to let the magistrate independently evaluate the reliability of the informant and that there was insufficient data from which he could evaluate the "tip."

In reviewing the constitutionality of the warrant here, we are of the opinion that there is a sufficient showing for the magistrate to be convinced of the informant's reliability. The affidavit states that the police had used his information on other occasions and that three arrests and one conviction had resulted therefrom within the preceding fourteen months. The affidavit also indicated the informant was an eyewitness, and as stated in *McCreary,* supra:

> "* * * An informant who alleges he is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient 'reliability' of the person. * * *" 406 F.2d at 1269.

We also believe that the affidavit meets the "underlying circumstances" requisite for evaluation of the "tip." The actual viewing of the crime by the informant satisfies this requirement in addition to being supportive of his reliability. This is specifically stated in *Spinelli,* supra, when the Court reviews the sufficiency of the affidavit:

> "* * * The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. * * *" 89 S.Ct. at 589.

See also, *McCreary,* 406 F.2d at 1269.

We therefore conclude that the affidavit satisfied the U. S. Supreme Court-enunciated standards to justify issuance of the search warrant.

Defendant contends, however, that a prerequisite to issuance of a body cavity search warrant is something more than probable cause, which he calls a "clear indication" that the items to be seized are in the cavity itself. He cites Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966).

The requirement that more information (a clear indication) is needed to legitimize a body cavity search was promulgated in *Schmerber* in the context of a warrantless search incident to a legal arrest. The "clear indication" test has also been applied to body cavity searches made at borders. Usually no probable cause is required, nor does the Fourth Amendment apply, to a search of an individual coming across the border. Henderson v. United States, 390 F.2d 805 (9th Cir. 1967). However, in the

border situations, courts have required a "clear indication" that the contraband is concealed in a body cavity. Rivas v. United States, 368 F.2d 703 (9th Cir. 1966); *Henderson*, supra. In short, something more than mere suspicion is required for cavity searches, conducted at the border, although as pointed out in Huguez v. United States, 406 F.2d 366 (1968), the "clear indication" standard in that context is less than the traditional probable cause. The "clear indication" test, therefore, has been accorded two different meanings. In the border search cases, it is that additional amount of information which is more than mere suspicion. In a search incident to a lawful arrest, it is that additional amount of information which is more than probable cause to arrest.

In *Schmerber*, however, the Supreme Court went beyond saying merely that the "clear indication" test applies to the warrantless search incident to the lawful arrest. The Court went on to say that when the body cavity search was required, obtaining a warrant was the most appropriate procedure as it provides the requisite safeguards against unnecessary invasions of privacy.

Since we are convinced the affidavit here satisfied the requirements of *Spinelli*, supra, and *Aguilar*, supra, we find that there was no constitutional infirmity in issuing the search warrant and that there was indeed probable cause to search the defendant's rectum. We believe the very specificity of the informant's information lent itself to credibility rather than rumor. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

We also point out that the magistrate had the benefit of the affidavit and *oral* testimony. Both appear in the record as the oral testimony is paraphrased in a minute entry. We believe both can be considered in evaluating the propriety of the warrant issuance as stated in *Aguilar*, supra:

"* * * It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention. * * *" (Emphasis in original omitted) 84 S.Ct. at 1511, n. 1.

The minute entry reads as follows:

*   *   *   *   *   *

"*Mr. Heinze* was sworn and questioned by the Court regarding the basis upon which he felt a SEARCH WARRANT should issue, and under oath, *testified as to several instances when the confidential informant involved herein has supplied him with information* concerning narcotics and the possession thereof by any person and that in each instance such information furnished by said informant proved to be accurate and reliable;

That said *Mr. Heinze further testified regarding the facts and circumstances surrounding the arrest* or apprehension of the Deft. herein and *the basis upon which he believes that the Deft. has secreted upon his body a quantity of heroin;*" (Emphasis added)

*   *   *   *   *   *

In ruling on the motion to quash, the trial court was cognizant of both the affidavit and the minute entry and justifiably concluded that the reference to the minute entry, however, was surplusage since, as we have already indicated, the magistrate had sufficient information before him, solely from the face of the affidavit, to determine for himself that there was probable cause to search the rectum of defendant for heroin.

Defendant's third contention is that failure to appoint counsel for him at the preliminary hearing violated his right to counsel. However, no showing of prejudice at trial having been demonstrated to us, we reject this contention. State v. Scott, 11 Ariz.App. 68, 461 P.2d 712 (Filed December 2, 1969).

Defendant's next contention is that he was unconstitutionally detained in the county jail prior to the issuance of the search warrant. In particular, he contends that he had a right to counsel and that he was confined for an inordinately long period in overly-cramped quarters.

These issues were submitted to the trial judge at the time of the hearing on the motion to suppress, and he made the following comments:

"I think it would have been better to have used a more ample space to detain him in, but I think as a practical matter in law enforcement, officers are sometimes compelled to very closely observe a suspect. I think that it would have been a better practice to put him in a little larger cell, but I can't say that his detention in this area was cruel and inhuman punishment.

And I think the opportunity to communicate with counsel or someone was given to him within a reasonable period of time, as he was arraigned in justice court about one o'clock of the same day, so I will deny the motion."

The defendant's uncontradicted version is that his requests to make telephone calls were ignored; that he was confined to a small room in the jail; and that he was unable to sleep or rest because the agents sat on the bed with him from about 3:45 a. m. until they ate breakfast at about 7:00 a. m. Defendant went back to bed until about 11:00 a. m. at which time the warrant was shown him. He was taken before the magistrate at 1:00 p. m. that afternoon.

The defendant poses an interesting question with regard to his right to counsel during this period of detention and examination. His argument appears to be that under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), an accused has the right to counsel when requested. We agree that *Miranda,* supra, and *Wade,* supra, declare that the right to counsel at pretrial confrontations with police is not only required to protect the defendant's Fifth Amendment rights, but the right to counsel is guaranteed whenever counsel is necessary to preserve defendant's right to a fair trial. As stated in *Wade* supra:

"* * * [W]e scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." (Emphasis in original) 87 S.Ct. at 1932.

We believe in the instant case that the search of defendant's rectum did not require, nor could it be aided by the presence of counsel. This conforms with the holding in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), wherein the United States Supreme Court held that the defendant had no right to have his counsel present when a blood test was taken. Also, we do not believe that the defendant's right to a fair trial was jeopardized because, as defendant puts it, had he been able to contact counsel he might have sought release by habeas corpus. Blackford v. United States, 247 F.2d 745 (9th Cir. 1957). We believe he was taken before the magistrate within a reasonable time.

Lastly, defendant argues that his eleven-hours' detention violated his rights under A.R.S. § 13–1418 which mandates taking an arrestee before a magistrate without *"unnecessary delay."* In State v. Jordan, 83 Ariz. 248, 320 P.2d 446 (1958), our Supreme Court held that a 24-hour delay was not so prejudicial as to render any statements made during that time excludable. We do not believe that the delay here was constitutionally impermissible or subject to the sanctions of Arizona's statutory penalty.

Judgment affirmed.

HATHAWAY, and HOWARD, JJ., concur.