483 P.2d 541

**STATE of Arizona, Appellee,**

v.

**Edward Lee MICHAEL, Jr., Appellant.**

**No. 2098.**

Supreme Court of Arizona,
In Banc.

April 2, 1971.

See also 104 Ariz. 129, 449 P.2d 594.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

John J. Flynn, Phoenix, for appellant.

LOCKWOOD, Justice:

This is an appeal by Edward Lee Michael, Jr. from the conviction of murder, second degree, resulting from a retrial after his previous conviction was reversed by this Court. See State v. Michael, 103 Ariz. 46, 436 P.2d 595 (1968). Defendant was informed against for murder of an undesignated degree and after his second trial was found guilty by a jury of murder, second degree. He was sentenced from a minimum of ten to a maximum of twenty years in the state prison. From his conviction, denial of motions for new trial and directed verdict and sentence, he appeals.

The questions presented for review are:

"1. Did the trial court err in failing to suppress evidence obtained as the 'poisonous fruit' of inadmissible, involuntary statements of the appellant?

"2. Was the search and seizure of the weapons and ammunition in violation of the Fourth Amendment because the items seized were not within appellant's immediate control and thus the search and seizure was not incidental to his arrest?

"3. Did the court err in allowing the expert testimony of F.B.I. Agent George Burley based upon his analysis of missing and inadmissible evidence?

"(a) Should an expert witness be allowed to testify as to tests conducted upon tangible evidence not produced at trial?

"(b) Should an expert witness be allowed to testify as to tests conducted upon unlawfully seized evidence?

"4. Did the court err in allowing a neighbor of decedent to give hearsay testimony concerning statements made by the decedent with regard to domestic strife between the latter and appellant?

"5. Did the jury instruction on malice aforethought adequately inform the jury of the legal requisites of second degree murder?

"6. Did the prosecutor engage in misconduct that improperly influenced the jury?

"7. Is the Fifth Amendment requirement that capital crimes be prosecuted by indictment applicable to the states?"

The reversal of defendant's previous conviction was based on the admission in evidence of certain incriminating statements by the defendant to police officers before he was advised of his right to remain silent and to have counsel, in violation of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). (Since his first trial occurred before the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, its principles were not involved.)

In the present appeal defendant's first two questions challenge the admission in evidence of weapons and ammunition which he contends were the "poisonous fruits" of the oral admissions involved in his first appeal, or in the alternative that such evidence was the product of an unlawful search and seizure.

The facts material to our consideration of these arguments are as follows: On July 6, 1965, about midnight, Police Officer Thomas Star was dispatched to investigate a shooting at the defendant's residence in Scottsdale, Arizona. The officer arrived shortly after an ambulance, and was met in the driveway by defendant's father who said "my son just shot his wife. I think she's dead". Officer Star was then escorted by defendant's father to a bedroom in the home where the defendant was lying on the bed. The deceased, Florence Michael, was slumped over in a chair with an apparent bullet wound in her cheek. As the body was being removed from the room by ambulance attendants the defendant arose from the bed and started to follow; Officer Star grasped the defendant's right arm and asked "Where is the gun?"[1] defendant responded "I shot my wife. Is she dead? Please help her." Again Officer Star asked where the gun was and the defendant responded "Its over there." and pointed to the interior of the bedroom with his arm. The defendant's son Timothy, who had entered the room, then opened the desk drawer and said to the officer, "Here it is." Star looked into the drawer and identified a .22 caliber revolver and a .45 caliber automatic both enclosed in holsters and then closed the

[1]. In his first trial we found that the case had reached the accusatory stage and we said in 103 Ariz. at page 49, 436 P.2d at page 598: " * * * Defendant had started to follow the body as it was being removed from the room, but Star took hold of his arm, stopped him and asked, 'Where is the gun?' In effect this was telling defendant that he (defendant) had knowledge of where the gun was that had been used in killing the deceased, which was asking defendant to furnish evidence which would be used against him at the trial. He had not been advised of his rights. Star had stopped defendant while he was following the attendants who were removing the body of the deceased from the room, evidently for the purpose of eliciting incriminating statements. The question was therefore not just in the investigatory stage, but had begun to focus on defendant as a particular suspect, and had therefore reached the accusatory stage."

drawer and accompanied the defendant into the living room. Star then assumed a position which would enable him to observe the bedroom and the defendant. Other officers arrived and placed the defendant under arrest.

■ The incriminating admissions of the defendant and declarations of his father were not admitted in evidence at the second trial, but are taken from the testimony given at the hearings held before and throughout the trial, on defendant's motion to suppress the physical evidence. Such statements are material to the court's determination of whether circumstances existed which would allow a search to be made without a warrant. We believe that the search was reasonable under exceptions enunciated by the United States Supreme Court. The officer had a right and duty to locate the weapon incident to the safety of himself and other persons present at the scene, as well as the obligation to preserve the evidence connected with the crime. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. A.R.S. § 13–1415.

In his argument at trial and in this appeal defendant relies upon Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 as supporting his position that the search exceeded the scope permitted by that decision. Chimel, supra, is not applicable to the facts of this case. Further, since we are dealing with a retrial of a case tried before Chimel, the law as it existed prior to that decision, as summarized in Justice White's dissenting opinion is controlling. Chimel has been held not to be retroactive. Williams v. United States, 418 F.2d 159 (9th Cir.); State v. Bustamante, 11 Ariz.App. 129, 462 P.2d 822; State v. Ramos, 11 Ariz.App. 196, 463 P.2d 91. In Chimel, supra, the absence of probable cause was the reason advance judicial approval of the search

had not been obtained. No emergency there existed as it did in the instant case. The physical evidence of the deceased, with an evident gunshot wound visible, coupled with the father's statement that his son had just shot his wife furnished probable cause for the officer to expect to find a gun nearby.

■ The next question is did the evidence become tainted by reason of the defendant's inadmissible statements and cooperation in indicating the location of the guns. A similar problem was presented this Court in the retrial of Miranda, supra, and in State v. Miranda, 104 Ariz. 174, 450 P.2d 364, cert. denied, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 we held:

"That the 'fruits' doctrine is not a for-the-loss-of-a-nail-a-kingdom-was-lost rule is indicated in Wong Sun v. United States [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441]. It seems probable that Wong Sun would not have 'voluntarily' (83 S.Ct. 419) returned to the office of the Narcotics Bureau (83 S.Ct. 411) to make his incriminating statement if he had not been previously made aware of the physical power of the law when he was arrested ' * * * without probable cause or reasonable grounds.' 83 S.Ct. 419. Yet, in Wong Sun, the Court found that the confession was sufficiently ' * * * "attenuated to dissipate the taint." ' 371 U.S. 490, 83 S.Ct. 419.

"It seems to this Court that there is a natural classification of 'fruits' into at least three possible categories. The first would be the situation presented in Wong Sun—that of a subsequent confession of the accused himself. The second might be tangibles of evidentiary value. The third might be testimony of witnesses who have personal knowledge of the crime. In declining order, there would usually be a decreasing degree of causal connection between the previous invasion of privacy and the existence of the incriminating evidence and its availability to the prosecution."

The specific location of the guns was furnished by the defendant's son Timothy who had placed them in the drawer following the shooting. In his own right as a witness Timothy could disclose the location. However, if we adopt the defendant's theory that Timothy responded to his father's remarks to Officer Star that he was to assist in the search for the weapon then we can conclude that defendant consented to the search and Timothy was his agent. Prior to the decisions in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) a preliminary notification of a right was not held to be a condition precedent to a valid waiver of that right and therefore the facts and law would support the proposition that defendant consented to the search and seizure. Manni v. United States, 1 Cir., 391 F.2d 922, cert. denied, 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 143; People v. Lyles, 260 Cal.App.2d 62, 66 Cal.Rptr. 799; People v. Trent, 85 Ill.App.2d 157, 228 N.E.2d 535; People v. Smith, 63 Cal. App.2d 779, 48 Cal.Rptr. 382, 409 P.2d 222. In People v. Smith, supra, the California Supreme Court held that the statements of a defendant were inadmissible because of failure of the police to give the warnings required by Escobedo, supra, but the search of the house was held to be lawful by reason of her voluntary consent. The United States Supreme Court referring to the Miranda decision in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 acknowledges a distinction between testimonial evidence and search and seizure under the Fifth Amendment guarantee against self-incrimination. We hold that the evidence was admissible.

■ Following the arrest of the defendant the murder weapon together with nine cartridges which had been in the cylinder, one of which had been fired leaving an empty casing, the slug which had been removed from the victim and an unknown quantity of extra cartridges which police had obtained in a subsequent search of the defendant's home (without a warrant) were forwarded by the police to the F.B.I. Crime Center in Washington, D. C. At the trial F.B.I. Agent and Ballistic Expert George Burley testified for the state. Defendant contends that such testimony was based upon inadmissible and missing evidence and should have been excluded from his trial. The spent casing was lost prior to the trial and was not introduced in evidence. A photograph, however, was available to the court. The tests performed by Agent Burley had been conducted with the aid of the missing casing and extra cartridges. The trial court refused to admit the extra cartridges in evidence, as having been seized unlawfully in the subsequent search. The agent's testimony was confined to the missing casing and his experience in general with the characteristics of that ammunition, which was identified by manufacturer's name as well as period of manufacture. Whether to permit an expert witness to testify about physical objects not in evidence is within the sound discretion of the trial court, according to the circumstances existing. Patterson v. Chenowth, 89 Ariz. 183, 360 P.2d 202; State v. Romo, 66 Ariz. 174, 185 P.2d 757. We can find no error to the defendant in admitting this limited testimony.

The missing shell did not create a handicap to the defendant's ballistics expert who testified to the same matters. The reasonableness of the testimony was a question for the jury. This evidence bore upon the question of whether the wound was self-inflicted by the victim in connection with the asserted defense that the death was a suicide and not murder. The significance of the presence or absence of powder burns can best be explained by an expert and not left to speculation by the jury solely on inference drawn by counsel in closing argument. At the close of the trial the court at defendant's request instructed the jury on missing evidence as follows:

"If you find that the State has destroyed or lost, or caused to be destroyed or lost any evidence whose nature, quality or description is an issue,

you may infer that the true fact is against the State's interest."

Defendant next contends that the testimony of Annabelle Tomcheck, a neighbor and friend of the deceased who testified relating to statements made by decedent shortly before her death should have been excluded since they were hearsay and inadmissible in the state's case in chief. The prosecution called such witness to establish the "state of mind" of the deceased shortly before her death. Such testimony was not offered for the truth of the statements, but as an exception to the hearsay rule. Udall, Arizona Law of Evidence, § 173 at 353. The witness Tomcheck testified as follows:

"Q. Mrs. Tomcheck, would you please tell the jury what Flouncy Michael told you on the night of the 4th of July 1965, which was just shortly before she died?

"A. Just what she told me? Can I include my conversation to her?

"Q. Tell the jury what she told you that night.

"A. She told me that she was going to stay at the Michael residence until the youngest, Bruce, was—he would be out of high school, and she would then get a divorce and go out and start a new life. Her only concern at that time was for the boys.

"Q. Did she state how long a period of time this would be?

"A. Five years."

Defense counsel in his brief maintains such testimony was inadmissible as the deceased's state of mind was not in issue.

We cannot agree with defense counsel that the state of mind of deceased was not in issue in view of the earlier statements on that subject by the defense. In cross-examination of the defendant's father Edward L. Michael, Sr. (a state's witness) the following is shown by the record.

"Q. BY MR. KESSLER: (Defense Counsel) Mr. Michael, when we described her condition, or her conduct as having ups and downs, can you give any specific examples, do you remember any—observing any experiences, even though they may seem minimal or slight or trivial, which would indicate that she was having moody periods or different types of conduct exhibited?

"A. Yes. One Saturday afternoon—this I would call it an 'up'—I heard loud voices from the back yard, so I entered the house to learn what was going on just as Flouncy addressed somebody in the living room, the boys among others, and saying, 'Your camping trip is off, you can't go.'

"MR. DIETTRICH: I object, hearsay testimony by the witness.

"MR. KESSLER: Well, your Honor, I'm not so much offering this for what was said but rather for a condition, or a state of mind because I think in this particular case, the state of mind of the deceased is in issue just as much as the defendant's. I'm offering it primarily for this purpose, not for what she said, but how she said it, her demeanor and conduct, so I'm offering for the act itself as opposed to the actual words.

"THE COURT: I'll allow it for that purpose."

Defendant having opened the door on the issue of "state of mind" in order to prepare the jury to be receptive to a defense cannot object if the other party offers evidence of like nature on the same subject. Turley v. State, 48 Ariz. 61, 75, 59 P.2d 312, 318; Udall on Evidence, § 11.

Defendant maintains that the court's instruction on malice was both unintelligible and a misstatement of the law. The reporter's transcript reveals that such instruction as well as defendant's requested instructions No. 7 and No. 8 were incomplete, garbled statements. When compared to the written version in the record from which the court read it is obvious that the error was in the transcribing. Such statements if in fact made would have brought both attorneys to their feet and interrupted the proceedings. No objection was made following the instructions to the jury, although

the court made the customary inquiry as to whether there were any further instructions.

Defendant does not avow that such statements were made by the court, but rather states that since he had previously objected to the court's standard instruction on malice, from that point forward it was no longer necessary to object concerning that instruction. With this we do not agree. A specific objection to an instruction upon one ground does not raise an objection upon some other ground. Rule 51, Rules of Civil Procedure, 16 A.R.S. Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674. In reviewing the proceedings below this Court does not look beyond the record on appeal. Crouch v. Truman, 84 Ariz. 360, 328 P.2d 614. See also State v. Rockefeller, 9 Ariz.App. 265, 451 P.2d 623, cert. denied 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199.

Defendant objected to a portion of the court's instruction on malice. Defendant contends that such portion of the instruction is not a correct statement of the law and amounts to a comment on the evidence by the court. Defendant requested instead that the court read to the jury the definition of malice as set forth in A.R.S. § 13–451. Upon an examination of the entire instruction given we find no error. State v. Mathis, 92 Ariz. 194, 375 P.2d 388; State v. Preis, 89 Ariz. 336, 362 P.2d 660.

■ Defendant contends that he was deprived of a fair trial as a result of the various occurrences of misconduct of the prosecutor during the trial. We note that counsel for both the defense and the state represented their positions with zeal. Likewise the court's attention was drawn to any possible improper act by the adversary in the form of objections and in the case of the defense, numerous motions for a mistrial, directed verdict and later a new trial. The court heard argument and exercised its discretion and in the absence of an abuse of that discretion this court will not disturb such rulings. The parading between court and chambers and lengthy argument by counsel concerning admissibility of evidence no doubt can be attributed to various changes in the law applicable to admission of evidence which we dealt with previously in this opinion. We do not believe the court abused its discretion in its rulings on the separate alleged "improprieties" of the prosecution, to which defense had raised objection, which in effect was a finding that they were not prejudicial. Early in the development of changes in the law on admissibility of evidence Justice Frankfurter in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, made the observation:

> "Dispatch in the trial of criminal causes is essential in bringing crime to book. Therefore, timely steps must be taken to secure judicial determination of claims of illegality on the part of agents of the Government in obtaining testimony. To interrupt the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention. * * * And if such a claim is made after the trial is under way, the judge must likewise be satisfied that the accused could not at an earlier stage have had adequate knowledge to make his claim. The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. * * *"

■ Defendant's final contention that, the trial upon information and not indictment was a violation of his Fifth Amendment rights was also raised in his first appeal, we have held it to be without merit. State v. Michael, supra, 103 Ariz. at page 47, 436 P.2d 595. State v. Foggy, 101 Ariz. 459, 420 P.2d 934, cert. denied, 386 U.S. 1025, 87 S.Ct. 1386, 18 L.Ed.2d 468,

rehearing denied, 387 U.S. 938, 87 S.Ct. 2060, 18 L.Ed.2d 1008.

We are of the opinion that the defendant was accorded a fair and impartial trial. The judgment of the Superior Court of Maricopa County is affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and CAMERON, JJ., concur.