485 P.2d 849

**The STATE of Arizona, Appellee,**

**v.**

**Theodore NICHOLS, Appellant.**

**No. 2 CA–CR 228.**

Court of Appeals of Arizona, Division 2.

June 22, 1971.

Review Denied Sept. 28, 1971.

**26**

Gary K. Nelson, Atty. Gen., by John S. O'Dowd, Asst. Atty. Gen., Phoenix, for appellee.

John F. Corcoran, Tucson, for appellant.

KRUCKER, Chief Judge.

This court has previously issued an opinion in this case dated March 31, 1971, State v. Nichols, 14 Ariz.App. 312, 483 P.2d 53 (1971), in which we reversed the trial court on the ground of an apparently erroneous jury instruction. However, on motion to rehear, the State has called to our attention a recent Arizona Supreme Court opinion, State v. Michael, 107 Ariz. 126, 483 P.2d 541 (1971), and has filed an affidavit by the court reporter with regard to an error in the transcription of the instruction in question. The effect of the *Michael* case and the affidavit will be discussed below in our discussion of the question of the allegedly erroneous instruction.

Appellant, Theodore Nichols, was convicted by a jury of the crime of burglary and sentenced to a term of not less than two nor more than five years in the Arizona State Prison on February 19, 1970. A motion for a new trial was denied and appeal is taken from that denial and from the judgment of guilt.

About 9:00 a.m. on November 12, 1969, the defendant was found inside a commercial junkyard or storage yard, which was fenced and had locked gates. He apparently had been on an all-night drinking spree and, according to his story, entered the yard by climbing over material stacked against the fence. He apparently was going there for the purpose of sleeping in an open shed. On the morning in question, the defendant asked a woman, who mistakenly thought he was an employee of the yard, if he could help her; she asked him if he had a part for a washing machine. He was inside the fence at this point. Nichols told her to come back in an hour as he didn't have the part "at hand." He then apparently left the yard, looked in other places for a part, and returned to the yard where he again met the woman and advised her that he was unable to find the part. He asked her to return in another hour and he would, in the meantime, see if he could find the part. When the woman

returned this last time, she saw the defendant inside the yard near a locked shed, which the owner of the yard kept locked. Nichols was "working" on the door of this shed attempting to gain entrance when the woman observed him. Inside the locked shed were store fixtures and restaurant supplies. At this juncture, the owner of the yard arrived and, seeing Nichols inside the yard, advised the woman that Nichols was not an employee and then called the police. The defendant again left the yard and went to a nearby bar, where the police picked him up and charged him with burglary.

There was no evidence that the defendant took anything from the yard; he did not flee the premises; and he did not conceal himself when advised that the owner was going to call the police, but merely went to a nearby bar where he was apprehended. It was also brought out that the defendant had, on previous occasions, with or without some of his associates, slept in the yard.

The defendant has raised six questions in this appeal which we will consider in order.

The defendant first contends tht the trial court should have granted a directed verdict. We have reviewed the evidence here and conclude that there was substantial evidence presented at the trial below to support the jury's determination that the defendant was guilty of burglary, by entering the fenced or enclosed commercial yard used to store equipment or supplies, with the intent to commit grand or petty theft, in violation of A.R.S. Sec. 13–302, as amended, with the result that the conviction should not be reversed on appeal. State v. Williams, 104 Ariz. 319, 452 P.2d 112 (1969); Rule 270, Rules of Criminal Procedure, 17 A.R.S. This contention is without merit.

The defendant next contends he was denied a fair trial for two reasons: (1) his inability to make a $500 bond so as to assist in finding his witnesses, and (2) the State unnecessarily highlighted evidence concerning his prior felonies. Neither of these reasons was urged either at the trial of this case or in the motion for new trial. The defendant has cited no authority for the first reason and upon consideration of this argument, we find in it no merit.[1] As to the second reason, we have read the reporter's transcript in this regard and discovered nothing unfair in the manner the defendant was cross-examined as to his prior felony convictions. There was no objection made at the trial in this regard by defendant's counsel. The prosecuting attorney merely asked the defendant the nature of the offenses of which he had been convicted and the place where these offenses occurred, which questions were entirely proper. State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081 (1959).

The defendant's third contention is that the trial court admitted evidence of a crowbar found in the lock on the shed door, which the woman here observed the defendant to be working on in an attempt to enter. The defendant's objection is that there was no foundation laid connecting him with the crowbar. The picture of the crowbar taken shortly after the defendant's arrest indicates that the lock was partially bent. We find an entirely adequate foundation for, or connection of, the evidence in question. This contention is without merit.

The defendant's fourth contention is that the trial court erred in its instruction to the jury as to burglary and that the trial court should have given the defendant's requested instructions on burglary.

1. It should be noted that the trial court ordered the Pima County Sheriff to take the defendant to a place of business where the defendant thought a witness worked. A witness from that place did appear but his testimony was not such as to exonerate the defendant. It appears that the trial court assisted the incarcerated defendant fully in this regard.

The trial court gave the following instruction on burglary:

"Every person who enters any fenced commercial yard used for storing equipment or supplies with intent to unlawfully steal, take and carry away the personal property of another of any value or to commit any felony, is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out."

This instruction fairly states the prohibition of A.R.S. Sec. 13–302, as amended, which was to be applied by the jury to the evidence in the court below, while the defendant's requested instructions were not necessary, as they were in effect given to the jury in the instruction given, even if not in the same words. State v. Brady, 2 Ariz.App. 210, 407 P.2d 399 (1965).

As to the defendant's fifth contention, that the court's instruction on circumstantial evidence was erroneous, it is now true, under the holding in State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970), in which the Arizona Supreme Court held that there is no distinction between circumstantial and direct evidence and that they are intrinsically similar and that a proper instruction on "reasonable doubt" applies to all kinds of evidence,[2] that a circumstantial evidence instruction is no longer necessary.

■ The trial court here stated that it would give Maricopa County Uniform Jury Instruction No. 207 (Revised) (circumstantial evidence instruction), but the transcript indicates the instruction was either misread, misgiven or erroneously transcribed. The Uniform Instruction reads:

"In order to sustain a conviction on circumstantial evidence, the circumstances proven by the State must not only be consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish or tend to establish his innocence."

The instruction indicated by the reporter's transcript to have been given by the court left out the word "not" and the "in" in "inconsistent":

"In order to sustain a conviction on circumstantial evidence, the circumstances proven by the State must only be consistent with the hypothesis that the accused is guilty, but also must be consistent with any reasonable hypothesis or theory which would establish or tend to establish his innocence."

There was no objection at the trial to this instruction, as given, indicated by the reporter's transcript. Under this factual situation, we are of the opinion that the question here is controlled by our Supreme Court's decision (called to our attention on the motion to rehear by the State) in State v. Michael, supra. In that case, as here, the reporter's transcript revealed such garbled and incomplete statements that the failure of defendant to object to the instructions as given, and a comparison of the instructions in the reporter's transcript and the written requests for instructions, made it obvious to the court that the error there was one of transcription.[3] Such is the proper conclusion here. Also, in connection with its motion to rehear, the State has furnished the court with the trial court reporter's affidavit that his shorthand notes taken at the trial indicate that the trial court did give the Uniform Instruction set out above and that the transcription of this instruction in the reporter's transcript was erroneous. While we do not base our decision here on this affidavit, it is significant to note that the basis of our decision—an assumption that the trial court gave the proper instruction—is corroborated most strongly. The defendant's argument in regard to the trial

2. Overruling State v. Reynolds, 104 Ariz. 149, 449 P.2d 614 (1969), as to the holding in regard to circumstantial evidence.

3. In the instant case there is no requested instruction on circumstantial evidence in the record.

court's instruction on circumstantial evidence cannot be the basis for reversal here.

The defendant's last contention is that the trial court erred in allowing the owner of the yard involved here to see a diagram made by an earlier witness where the exclusionary rule had been invoked. There is no mandatory rule or statute in Arizona providing for exclusion and separation of witnesses; our Supreme Court has held that such a rule is solely a matter of the trial court's sound discretion. State v. Romero, 85 Ariz. 263, 336 P.2d 366 (1959). The record before us indicates that the defendant has made the diagram in question an exhibit in evidence. Examination of the transcript reveals no prejudice that could have resulted from the use of this diagram on direct examination of the later witness. This argument cannot be the basis for reversal. Dykeman v. Ashton, 8 Ariz.App. 327, 446 P.2d 26 (1968).

The opinion previously issued in this case is vacated and the judgment below is affirmed.

HATHAWAY and HOWARD, JJ., concur.