## HAYES *v.* WELLS, FARGO & CO.

COMMON carriers, who are engaged in the transmission and delivery of letters inclosed in envelopes, are not liable for any article of special value inclosed within the envelope, or for any loss beyond that of an ordinary letter, unless informed at the time they received the letter for transmission of the value of the same.

APPEAL from the Fourth District Court, City and County of San Francisco.

The complaint avers that defendants, at their office in San José, California, received from the plaintiff a letter containing a check or draft of the value of seven hundred and ninety-two dollars and ten cents ; such letter and check being inclosed in an envelope, sealed, and properly addressed to H. M. Newhall & Co., of San Francisco, California. That at the time of the receipt of such letter and check by defendants, the plaintiff paid them ten cents as hire for the transportation and delivery of such letter and check to the persons to whom the same were addressed, that being the amount demanded for such service ; no disclosure having been asked by defendants or made by the plaintiff of the value of the contents of the letter or envelope. The complaint further avers, that through the negligence or fault of defendants, such letter and contents were not delivered to the person to whom the same were addressed and the check made payable, but were delivered to a person not authorized to receive the same, and that the money was drawn by such person, and thus wholly lost to plaintiff.

The answer admitted " that defendants were common carriers, and as such engaged in transmitting and delivering letters, etc., for hire." It further averred " that plaintiff, at the time when he delivered the letter to defendants, knew that although they (defendants) received and assumed to transmit and deliver ordinary business letters of advice and information, within the State of California, at the rate of ten cents each, still that they did not assume, nor ever have assumed to transmit and deliver such letters with valuable inclosures at the rate of ten cents each, but to charge for such letters in proportion to the value of the articles inclosed." And further, " that the custom of these defendants is and always has been to

13

discharge their contract for the delivery of such ordinary business letters, by delivering them at the place of business or of residence of the person to whom they were addressed, by throwing them upon the counter, dropping them into the letter-box, or even putting them under the door, and in like manner, without attempting to make a personal delivery thereof to any person.   But in regard to other letters and packages purporting to contain valuable inclosures, it has always been the custom of defendants to register such letters and packages, deliver them personally to the person to whom they were addressed, take his receipt therefor, and take all other precautions called for by the value of the letter or package."

The answer further alleged : " That plaintiff knew the matters of fact above stated, and that he did not disclose to these defendants or to any of their agents the fact that his letter contained an inclosure of great value, nor offer to pay these defendants a hire proportioned to the risk and value of such inclosure."

*Henry B. Janes*, for Appellants.

The plaintiff having made a *prima facie* case of gross negligence or wrong delivery, the defense interposed is no bar to this action being maintained.   Such a *prima facie* case is made " when defendants refuse to deliver the goods, and fail to suggest any grounds for such refusal, or give any explanation of their conduct." (*Newstadt* v. *Adams*, 5 Duer ; *Beardslie* v. *Richardson*, 11 Wend. 25 ; A. & A. on Carriers, Sec. 38, note 4, Ed. 1857.)   The plaintiff was not bound to disclose the contents of the envelope or its value, no questions being asked by defendants.   " Fraud cannot be imputed to the owner from the mere fact that he delivered the goods after having seen a general notice published by the carrier, whatever may be its purport.   If the carrier wishes to ascertain the extent of his risk, he should inquire at the time the goods are delivered." (*Hollister* v. *Nowlan*, 19 Wend. 218, and authorities there cited ; Story on Bail. 5th Ed. 586, 588 ; *Philips* v. *Earle*, 8 Pick. 182.)

The rule of the common law in respect to disclosure is well settled ; exceptions were made to it by the passage of the Statute 2 William, 4, Chap. 68 (quoted at length in Edwards on Bail-

ments, 480). This statute was passed in 1830, and it is said that "While under its provisions the carrier is relieved from responsibility for parcels and packages of the articles enumerated in that statute, unless their value and contents are declared in the act of delivery, and a proper compensation paid for their carriage, it is to be observed that his duties in other respects remain unaltered." The common law, in the absence of statute law, is the rule in this State. (Stat. of 1850, 219.)

*Saunders, Dwinelle & Hepburn,* for Respondents.

The cases on the subject of the liability of common carriers are resolved by analysis into two classes.

1. When the common carrier, undertaking to receive and transport goods for hire, receives packages containing goods of large value, but still answering the description of goods. Here it is held, that mere silence as to the large value of the goods is not a fraud on the part of the shipper. Such were the cases of *Philips* v. *Earle* (8 Pick. 182) ; *Orange County Bank* v. *Brown* (9 Wend. 85) ; and see Story on Bail. Secs. 565–569.

2. Where the shipper, pretending to ship goods, secretly places in the package some other article of large value, which does not answer the description of the goods, such as money, bills of exchange, diamonds, jewelry, etc., this is held to be a fraud on the common carrier, as being an attempt to bind him to a contract which he did not make. Such were the cases : ( *Orange County Bank* v. *Brown,* 9 Wend. 85 ; *Sewell* v. *Adams,* 6 Id. 335 ; Story on Bail. Secs. 565, 565 *a,* 566 ; *Gibbon* v. *Paynton,* 4 Burr. 2298.)

The following cases are not in point for the purpose for which they are cited by the appellant : ( *Hollister* v. *Nowlan,* 19 Wend. 234 ; *N. J. Nav. Co.* v. *Merchants Bank,* 6 How. 344 ; *Cole* v. Goodwin, 19 Wend. 251 ; *Gould* v. *Hill,* 2 Hill, 623 ; *Atwood* v. *Reliance Trans. Co.,* 9 Watts, 87 ; *Moses* v. *Boston & M. R. Road,* 32 N. H. 523.) They go to show only that there are certain responsibilities which enter into the definition of the term "common carrier," from which persons following that occupation cannot divest themselves. They are not authority to the effect that common carriers cannot charge rates for transportation which are

proportioned to the value and risk of the packages transported. On the contrary, the case of *Hollister* v. *Nowlan* (19 Wend. 234) is authority for the contrary proposition.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover damages for the failure of the defendants to transport and deliver a letter, containing a check for seven hundred and ninety-two dollars, received from the plaintiff at their office in San José, inclosed in a sealed letter envelope, addressed to H. M. Newhall & Co., San Francisco. The defendants do not appear to have been informed that the sealed envelope contained the check. It appears also that the envelope with its contents was not delivered to the persons to whom it was addressed, but by some means came to the hands of a person not authorized to receive it, who drew the money on the check, and the plaintiff therefore claims that he is entitled to recover the value of the check as damages. The case was tried by a jury, who found for the defendants, and a judgment was rendered in their favor, from which the plaintiff appeals.

The defendants are extensively engaged in the transportation of letters and packages of goods, and as such are common carriers, and subject to all the duties and responsibilities of common carriers. The general rule of law is well settled, that common carriers must take care at their peril, that goods placed in their charge for transportation are delivered to the right person; for otherwise they will become responsible. (Story on Bailments, Secs. 543–545 *b*, Angell on Car. Secs. 297, 324–326 ; Edwards on Bailments, 515.) But, while such is the general rule, the question as to what will constitute a delivery by which the responsibility of the carrier will cease, depends upon a variety of circumstances: such as the custom of particular places, the usage of particular trades, the manner of transacting business by different classes of carriers, their different means of transportation, and often upon special or implied contracts between the parties. Any local or special custom or usage upon the subject will govern as an implied term in the contract between the parties. Thus, while a carrier by the ordinary

means of land conveyance will be required to deliver goods transported by him to the person entitled thereto, either at his place of business or residence, a carrier whose means of conveyance is by water will only, as a general rule, be required to deliver property at the proper wharf or landing; or if a railroad, at the proper depot. The mode in which the defendants transact their business, however, makes it their duty to deliver letters and packages to the owner at his place of business or residence, according to the character of the articles. This delivery must be either to the party to whom the letter or package is addressed in person, or to some agent, clerk, or employé authorized by him to receive the same. This will often depend upon the established mode or custom of doing business between the carrier and his customers. What that mode or custom was as between the defendants and Newhall & Co., does not appear in the evidence. The defendants in this case failed to deliver the letter in question, either to the person to whom it was directed, or to any other person authorized to receive it.

The degree of care and diligence which a carrier is bound to bestow upon property intrusted to him for transportation, depends upon its value and quality. Thus he will be required to exercise greater care and diligence in the preservation and safe delivery of a box of coin than a keg of nails, and of glassware than of bar iron. The value of the article especially is an important ingredient in considering the question of negligence; for that will be gross negligence in the case of a parcel of great value, which would not be in the case of a common article of little value. (Angell on Carriers, Sec. 8.) The general rule in the case of carriers is that they are bound to use *ordinary diligence*, and are liable for *ordinary neglect;* that is, they must take such care of the property intrusted to them as every prudent and intelligent man commonly takes of his own goods. (Id. Sec. 11.)

When the carrier is unable to ascertain the value of the goods intrusted to his care, from the appearance of the package, a question has arisen whether he must inquire its value, or whether the person employing him must inform him of the value, when it is of some great or peculiar value, which is not disclosed by the appearance of the package itself. The carrier has no right to open a

letter or package intrusted to him for transportation, in order to inform himself of the quality or value of its contents.   How, then, is he to obtain the necessary information to enable him to exercise that care and diligence which the law requires of him—which, as we have shown, depends to a great extent upon the article itself? It is the duty of every person sending goods to make use of no fraud or artifice to deceive or mislead the carrier, so as to increase the risk, or to lessen his care and diligence.   If any fraud or unfair concealment is used, the carrier will not be responsible for any loss, and it will make the contract between them null and void.   This rule applies to all cases of concealment or suppression of facts, and to all false statements made by the employer for the purpose of misleading the carrier.   (Story on Bailments, Sec. 565.)

Still, the general rule has been held to be that the employer is under no obligation to inform the carrier of the value of the property ; and the mere fact that he does not do so, in the absence of any attempt or act to mislead or deceive him as to the value, will not, as a general rule, affect the legal liability and responsibility of *the carrier.   But it is also held*, as a general rule, that the carrier has a right to inquire as to the value and character of the property, and to have a correct answer.   If he is deceived in any way, or a false answer is given, in such case he will not be responsible for any loss.   It has also been held, as a general rule, that " if he makes no inquiry, and no artifice is made use of to mislead him, then he is responsible for any loss, however great the value may be."   (Id. Sec. 567.)

These rules were adopted in cases where the articles transported were goods of the kind ordinarily transported by carriers, before the more modern changes in the modes of doing mercantile business.   But recently a new kind of business has grown up in connection with the carriage of goods, and that is, the transmission of letters put up in sealed envelopes, which has become a most important branch of the express business of the country.   It is an important question whether this rule, making it the duty of the carrier to inquire as to the value, properly applies to that branch of the business.   There are some good reasons for the rule in the case of ordinary packages of goods, which are from necessity

received personally by the carrier or his servants.    But those reasons do not apply to the receipt and transmission of letters. The evidence in this case shows, what is generally known to be the case, that the greater portion of such letters are received by the letter-carriers in boxes, placed either in their own business houses or in different localities convenient to business men in the larger cities ; and it is only a very small portion of the letters that are ever received by the carriers or their employés in person.    This plan of doing business has become necessary, for the speedy transaction of business and the convenience of the public.    With the thousands of letters daily received and transmitted by letter-carriers, it would be almost an impossibility for the carrier to make the inquiry as to the value of the contents of each letter received by them.    The law does not require impossibilities, or attempt to deprive the public of the means necessary for the convenient, safe, and speedy transmission of their letters.    On the contrary, it will adapt its rules to the new and varying systems of business, so that justice may be done to all parties.    Where the reason ceases, the rule ceases.    We are satisfied that this rule should be so far modified as to except letters from its application, and relieve the carrier from the necessity of making the inquiry of the value of the contents of letters received by him ; making it the duty of the person employing the carrier to inform him of such value, in all cases where he desires to hold the latter responsible for any loss beyond that of an ordinary letter not containing articles or papers of special value.    Where he does not desire to hold the carrier responsible, by withholding the information he assumes the risk, and avoids the payment of the extra compensation the carrier would be entitled to demand.    By adopting this rule, the question is relieved of many of its difficulties, and no hardship or improper burden is imposed upon either party.    Upon giving this notice of the value of the letter, the carrier can advise the employer of the compensation he requires for assuming the care of the letter, and the responsibility for its safe transmission and delivery to the proper person.    If he demands no extra compensation beyond that for an ordinary letter, he will still be bound by all the duties and liabilities of a common carrier.    By means of the notice, the carrier will be

required to use such kind of care and diligence in the performance of his duties as the law demands in cases of that kind, where articles of value are placed in his charge. It has been a mooted question as to how far one party may innocently be silent as to any matters which may form ingredients in directing the judgment of the other contracting party; and a very able writer on the subject of bailments maintains the necessity of a full disclosure of all the facts. (Jones on Bailments, Sec. 38; Story on Bailments, Sec. 566.) But the authorities have settled the general.rule as before stated; and that rule we would not disturb in cases where it is properly applicable.

The evidence in this case shows that it is the custom and usage of the defendants to receive, transmit, and deliver letters specially intrusted to them as valuable, in a mode different from ordinary ones; and that they make an extra charge for so doing, depending upon the value of the letter, as a compensation for the extra trouble and risk. By that mode, great pains are taken to deliver the letter to the proper person, taking his receipt therefor, which is not done with ordinary letters. But the evidence leaves it uncertain whether the plaintiff knew of this difference in the mode of carrying and delivering the different kinds of letters. Under the view we have taken of the rights and duties of the parties, it was immaterial whether he had notice or not; as it was the duty of the plaintiff to inform the agent of the defendant of the contents of the letter, so far as it contained any article of special value.

It is a general rule in the law of bailments, that, if the plaintiff has brought the injury on himself, or has been guilty of negligence, and that negligence in any way concurred in causing the loss or damage, he is not entitled to recover. This rule is most frequently applied to cases of damage occasioned by obstructions in a highway, to collisions between carriages upon land and vessels upon water. (Angell on Carriers, Secs. 556–562, 636.) It also applies to common carriers, who are not held responsible for damages caused by the neglect of their employer. (Story on Bailments, Secs. 492, 563.) It also applies to innkeepers. (2 Hilliard on Torts, 617, 618.) In this case, the evidence shows that the plaintiff is an intelligent business man, yet he sent the check in.

question, indorsed by himself, in blank—thus leaving it in the power of any person, who might get possession of it improperly, to draw the money; whereas, if it had been indorsed payable to the order of the firm to whom it was sent, the money could not have been drawn by an unauthorized person without forging the names of the indorsers; and, if the money had been paid on such forged indorsement, the drawees could have been compelled to repay it to the person really entitled to it. This was gross carelessness and culpable negligence on the part of the plaintiff. If he had used but ordinary care and the precautions usual in such cases, in indorsing the check, the probability is that no loss or injury would have occurred.

The judgment is affirmed.