503 P.2d 807

**The STATE of Arizona, Appellee,**

v.

**Larry FASSLER, Appellant.**

**No. 2069.**

Supreme Court of Arizona,
In Banc.

Nov. 28, 1972.

Gary K. Nelson, Atty. Gen., Phoenix, by Carl Waag, Former Asst. Atty. Gen., Louis A. Moore, Jr., John S. O'Dowd, Asst. Attys. Gen., Tucson, for appellee.

O'Dowd, Fahringer & Diamos, by Clay G. Diamos, Tucson, for appellant.

Larry Fassler, in pro. per.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilty to the crime of unlawful transportation of marijuana, § 36-1002.07 A.R.S. and a sentence of not less than fifteen nor more than eighteen years in the Arizona State Penitentiary.

We are called upon to answer the following questions:

1. Did the trial court err in admitting in evidence testimony as to statements made by defendant during a traffic stop?

2. Was it error to admit into evidence marijuana seized as the result of a warrantless search of containers in a New York City airport?

3. Was the admission into evidence of an address book seized at the time of the arrest error?

4. Was it proper to admit into evidence burlap sacks found in defendant's garbage can on the date of his arrest?

5. Was it error to admit into evidence items seized in a search conducted with the permission of defendant's mortgagee?

6. Did the trial court commit error in denying defendant's motion for an order requiring discovery of police reports and other evidence in the State's possession?

7. Was the trial court in error in failing to give an entrapment instruction?

8. Did the trial court err in denying the defendant the opportunity to poll the jury concerning its knowledge of prejudicial articles that appeared in the newspapers during the trial?

9. Was it an abuse of the trial court's discretion to deny the defendant access to the presentence report?

The facts necessary for a determination of this matter on appeal are as follows. On 12 February 1968, at approximately 7:00 p.m., the defendant, Larry Fassler, arrived at the American Airlines Freight Office at Tucson (Arizona) International Airport. Fassler and an employee of American Airlines, Mr. Blas Maldonado, unloaded four crates from the car in which the defendant had arrived. The crates were metal with wooden strips, not the usual kind of container used for shipment. Two of the containers were shipped to New York, New York, care of Tanker Reisman, and two were consigned to San Francisco, California. Two airline employees received the shipment for the airline and prepared the air bills involved in the transaction. The air bills were signed by Larry Fassler using the name of "Jay Lynn" of 105 South Irving in Tucson, Arizona.

A New York City police officer, Detective Michael Tobin, received information from American Airlines on 14 February 1968 concerning the shipment. Detective Tobin arrived at the airline's hangar shortly after midnight on the morning of 15 February, where he observed the two metal containers shipped by the defendant from Tucson. Detective Tobin bent down and smelled one of the containers detecting the odor of marijuana. He then proceeded to open the cartons which contained marijuana.

Patrolman Joseph Roman and Detective Light of the City of Tucson, acting pursuant to information received concerning the seizure of the two cartons containing marijuana in New York, went to 105 South Irving and attempted to contact "Jay Lynn" at 105 South Irving. An individual at that address informed the police officers that Mr. Lynn was not there. Noting that there were two vehicles in the driveway,

the officers waited until the other individual they suspected might be within came out.

A short time later, the vehicle, which was in the driveway, backed out and proceeded in a northerly direction on Irving. The officers followed the vehicle and while so doing ascertained that it was going over the speed limit. The vehicle was stopped and the driver was identified as Larry Fassler, the defendant. Detective Light read the defendant his "Miranda" rights, following which a conversation ensued. During this conversation the defendant revealed that he used the name "Jay Lynn" in his exporting business. The defendant was issued a traffic citation for speeding at this time and was allowed to go.

The defendant was later arrested on the transportation charge by members of the Tucson Police Department at the rear of the premises at 105 South Irving. He was advised of his "Miranda" rights and was allowed to telephone his attorney and Captain Ralph McMillan of the Arizona Department of Liquor License and Control. Fassler invited the police officers into his office while he made the calls.

During this time, Detective Wolfe found an address book on the desk in Fassler's office. The address book contained the name "Tanker Reisman" and a telephone number. At the same time, Officer Bernal discovered two gunny sacks with fragments of marijuana in them in the garbage cans outside the house.

Over a year later, on 29 April 1969, the premises at 105 South Irving was the subject of a search by Tucson Police Officer Bernal which revealed a telephone bill which was introduced into evidence as tending to impeach testimony of the defendant. This search was conducted with permission of Mr. Henry F. Nelson of the Associated Mortgage and Investment Company. The premises at 105 South Irving had been repossessed by the mortgage company as the defendant had failed to make the payments.

In his defense, defendant Fassler testified that he was working with Captain Ralph McMillan of the Arizona Department of Liquor License and Control, in attempting to procure the arrests of drug traffickers, although on cross-examination he admitted that Captain McMillan knew nothing about the shipment in question. Captain McMillan testified that although he had asked Fassler to help him, Fassler was not an officer of the department. Captain McMillan was asked:

> "Q Was Larry Fassler an employee of your department at any time?
>
> "A He was not."

During the trial, news articles were published in the Tucson, Arizona, newspapers concerning the case The story in the Arizona Daily Star quotes Sergeant Bernal as saying that Fassler was "one of the biggest suppliers of narcotics in Arizona and parts of California."

## ADMISSION OF STATEMENTS MADE DURING THE TRAFFIC STOP

■ Defendant's first assignment of error concerns the admissibility of the statements made by Fassler when he was stopped on or about 15 February 1968 for speeding. The traffic ticket and complaint in evidence indicates that the defendant was cited for 45 m.p.h. in a 25 m.p.h. zone. It is defendant's contention that the reason for stopping the defendant was to determine the relationship of Fassler to "Jay Lynn" and that the stop for speeding was in fact a pretext and a sham for the real reason for the stop. While it is apparent that one of the reasons the police officers were following Fassler's vehicle was to determine if he was in fact "Jay Lynn", there is nothing to indicate that the traffic stop was not in fact lawful. We are not concerned with an arrest or a search and seizure, but a stop for a traffic violation at which time the officers took advantage of the opportunity to determine the driver's identity.

■ Defendant further contends, however, that the "Miranda" warnings, given in the context of a traffic violation stop, were insufficient to insure the knowing and intelligent waiver of his rights as to the facts concerning the transportation of marijuana violation actually being sought by the officers. We do not agree. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) does not require that police officers notify the suspect as to the nature and seriousness of each and every crime the police may be investigating. See State v. Lucero, 151 Mont. 531, 445 P. 2d 731 (1968); State v. McKnight, 52 N.J. 35, 243 A.2d 240 (1968). We find no error in the admission of the statement made by defendant when he was stopped for speeding.

## THE ADMISSION OF MARIJUANA SEIZED AS A RESULT OF THE SEARCH IN THE NEW YORK CITY AIRPORT

On 12 February 1968, in an unrelated transaction, officers of the Los Angeles Police Department discovered two large cartons of marijuana in the Los Angeles airport consigned to Tanker Reisman of New York City. The Los Angeles authorities notified Detective Michael Tobin of the New York City Police Department that the shipment was on the way. Detective Tobin arrested Tanker Reisman when he attempted to claim the shipment upon arrival in New York.

■ On 15 February 1968, Detective Tobin was notified by airline officials at La Guardia Airport in New York City that two large containers had arrived from Tucson, Arizona, consigned to Tanker Reisman. Detective Tobin went to the airport, made an inspection of the parcels and according to his testimony leaned down near the crate and detected the odor of marijuana. He then opened the crates and without a warrant searched them and found the marijuana in question.

It is the contention of the defendant that this was an unconstitutional search and seizure and that the motion to suppress should have been granted.

The courts have tended to treat differently warrantless searches or seizures of items in transit or capable of being spirited away before a warrant can be obtained. Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Doyle, 456 F.2d 1246 (5th Cir. 1972). Also, if a police officer is in a place where he is legally entitled to be at the time, the courts should not deny him the privilege of observing what is present on the premises. Mr. Justice White has written of this distinction:

"The case before us concerns the protection offered by the Fourth Amendment of 'effects' other than personal papers or documents. It is clear that effects may not be seized without probable cause but the law as to when a warrant is required to validate their seizure is confused and confusing. Part of the difficulty derives from the fact that effects enjoy derivative protection when located in a house or other area within reach of the Fourth Amendment. Under existing doctrine, effects seized in warrantless, illegal searches of houses are fruits of a constitutional violation and may not be received in evidence. But is a warrant required to seize contraband or criminal evidence when it is found by officers at a place where they are legally entitled to be at the time? Before a person is deprived of his possession or right to possession of his effects, must a magistrate confirm that what the officer has legally seen (and would be permitted to testify about, if relevant and material) is actually contraband or criminal evidence?" Coolidge v. New Hampshire, 403 U.S. 443, 512–513, 91 S.Ct. 2022, 2061, 29 L.Ed.2d 564, 610 (1971). (White, J., Dissenting)

The facts of this case indicate that Detective Tobin had independent knowledge that the consignee, Tanker Reisman, was in jail, and that Reisman had received in a similar shipment a quantity of marijuana

addressed and shipped in the same manner as the containers in question. Detective Tobin was lawfully on the premises and was able to perceive an odor of marijuana emanating from within the two containers. Furthermore, the carrier had received calls from the sender in Tucson who wanted the shipment returned and Detective Tobin had reason to believe the shipment was threatened with removal.

We are aware that the problem of goods in transit has been treated differently by the United States customs authorities in the case of United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). There the postal authorities had reason to be suspicious of the packages mailed by defendant and the customs authorities were notified. Instead of searching the packages, they were held up for 29 hours while search warrants could be obtained and the United States Supreme Court affirmed their conduct. The question of a search without a warrant was not presented in that case. We believe that when, as here, the cartons are in the possession and control of a common carrier with danger that they may be returned at once that the search was proper. There were "exigent circumstances" which when considered with the other facts made the search reasonable. Cipres v. United States, 343 F.2d 95 (9th Cir. 1965).

> "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed.2d 653, 660 (1950).

Also, common carriers, such as airlines, are required by law to accept and receive for shipment items lawfully entrusted to them. We think it follows that with this obligation they have a right to protect themselves and not to be made unwitting and unknowing carriers of contraband (in this case narcotics) and may give permission for such a search:

> "When a shipper consigns goods in a sealed package to a common carrier,

such matters as rates, insurance values, and methods of handling are customarily determined by the carrier on the basis of the shipper's representations as to the contents of the package. Contrary to early case law on the point (Hayes v. Wells, Fargo & Co. (1863) 23 Cal. 185, 189–190), current tariff provisions under which regulated carriers operate in California authorize the carrier to open and inspect the package if it suspects that the nature or value of the contents does not correspond to those representations.

> "Further, because a common carrier has a general duty of care towards all the goods it transports, it also has the right to open and inspect a package which it suspects contains a dangerous device or substance which may damage other goods in the shipment or the vehicle carrying them. (13 Am.Jur.2d, Carriers, § 238, and cases cited.)

> "Finally, a common carrier, no less than any other citizen, has the right, indeed the duty, not to knowingly allow its property to be used for criminal purposes. While a carrier is bound to accept whatever freight it holds itself out as accustomed to carry (Civ.Code, § 2169), it is obviously not bound to accept freight which it is illegal to possess or transport * * *." People v. McKinnon, 7 Cal.3d 899, 103 Cal.Rptr. 897, 907, 500 P.2d 1097, 1107 (1972).

It logically follows that if common carriers may search parcels entrusted to them when they have reason to believe the parcels contain contraband they may then call upon police officials to inspect the parcels or call upon the police to seize said contraband when discovered by the carrier. Indeed, failure on the part of the carriers or its employees to notify the police of contraband could in certain instances make the carrier or its employee criminally liable as an accessory. The defendant, having entrusted American Airlines with the parcels in question, representing the contents to be lawful, should not now be able to complain that the carrier called the police

who made a search of the parcels in question.

## ADMISSION OF THE ADDRESS BOOK

█ It is the next contention of the defendant that the address book taken by Detective Werner Wolfe from the office at 105 South Irving immediately following the arrest of Fassler was illegally seized. Defendant, on appeal, relies on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), as supporting his position that the search of Detective Wolfe which produced the address book exceeded the scope permitted by that decision.

Chimel, supra, however, is not applicable to the facts of this case as the matter was tried prior to Chimel and Chimel has not been held to be retroactive. State v. Michael, 107 Ariz. 126, 483 P.2d 541 (1971).

The testimony of Officer Wolfe indicates that he found the address book in plain view:

"Q Where did you first see that Exhibit 12?

"A On the desk in the office.

"Q Did you take possession of that particular book?

"A Yes, I did."

There is no question that the search in question was contemporaneous with the arrest. The defendant was told that there was a warrant for his arrest and that he was under arrest, he was advised of his rights and he then invited the officers onto the premises, saying, "I can straighten this out with one phone call." The address book was found in plain view on the desk in the office while Fassler was using the phone. Objects falling in plain view of a police officer who has a right to be in a position to have that view are subject to seizure and may be introduced in evidence. Musgrove v. Eyman, 435 F.2d 1235 (9th Cir. 1971).

## THE SEARCH OF THE GARBAGE CAN

█ Defendant next contends that the search of the garbage can located in an alleyway at the premises at which he was arrested was in violation of the Fourth Amendment. Defendant cites People v. Edwards, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969) which admittedly held that under the circumstances of that case a search of the trash can within a few feet of the back door of defendant's home on defendant's property was unlawful.

The California Supreme Court in People v. Krivda, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), extended the Edwards, supra, holding to trash that "had been placed into the well of a refuse truck" on the premise that the defendant's trash did not lose its " 'identity' by being mixed and combined with the 'conglomeration' of trash previously placed in the truck." California's Chief Justice Wright concurring in part and dissenting in part could not agree that the federal Constitution "compels extension of [asserting] protection to trash cans to those placed adjacent to or on a public thoroughfare * * *", asserting that the expectation of privacy is "inextricably bound up in the physical location of the trash cans."

The United States Supreme Court granted certiorari in the Krivda case, 405 U.S. 1039, 92 S.Ct. 1307, 31 L.Ed.2d 579 and in a Per Curiam opinion vacated the judgment of the Supreme Court of California, remanding for further proceedings stating:

"After briefing and argument, however, we are unable to determine whether the California Supreme Court based its holding upon the Fourth and Fourteenth Amendments to the Constitution of the United States or upon the equivalent provision of the California Constitution, or both." California v. Krivda, —— U.S. ——, 93 S.Ct. 32, 34 L.Ed.2d 45 decided October 24, 1972.

We are not inclined to agree with the California view in this matter, but instead agree with the dissent of the then Chief

Judge of the District of Columbia Court of Appeals, Warren Earl Burger:

"The Fourth Amendment was designed to safeguard the individual's right of privacy in his home and in his personal effects against arbitrary intrusion by government officials. I cannot find a fundamental constitutional right to privacy in the garbage or trash pail of a rooming house where the receptacle is located out of doors in sight from the street and where there is an admitted constant invitation to the public authorities of the District to remove the contents as refuse. * * *" Work v. United States, 100 U.S.App.D.C. 237, 243 F.2d 660, 663 (1957).

And with the 9th Circuit of the Court of Appeals:

"The other items seized at the motel and later received in evidence were taken from a trash can outside Rooms 19 and 20. What a person knowingly exposes to the public is not a subject of Fourth Amendment protection. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). When defendants placed articles in this public trash can outside the room, they surrendered their privacy with regard to those articles. See United States v. Minker, 312 F.2d 632, 634 (3rd Cir. 1962). See also, Wattenburg v. United States, 388 F.2d 853, 857 (9th Cir. 1968)." United States v. Jackson, 448 F.2d 963, 971 (9th Cir. 1971).

We hold that there was no error in admitting into evidence the burlap bags containing the marijuana found in the garbage can.

## THE SEARCH WITH PERMISSION OF DEFENDANT'S MORTGAGEE

█ It is the defendant's position that the warrantless search by Sergeant Bernal on 29 April 1969 pursuant to permission of Mr. Nelson of Associated Mortgage and Investment Company, after the company had repossessed the premises, was violative of the Fourth Amendment and the tele-

phone bill which was found during the search should have been suppressed. The search in question was conducted nearly four months after the defendant had last made a mortgage payment and after the mortgagee, Associated Mortgage and Investment Company, had effectively taken possession of the property.

While the general rule is that one person's constitutional rights cannot be waived by another, in the area of consent searches courts have long recognized that certain third persons may give consent which will permit the use of seized evidence against the defendant. We believe that a mortgagee in possession may give consent to search the premises without warrant. We agree with the federal court:

"* * * The sole question presented on this appeal is whether the District Court erred in admitting into evidence certain articles found in an automobile by postal inspectors after the automobile had been lawfully repossessed by appellant's mortgagee who granted permission to search it without a warrant.

"Appellant contends that under the laws of Texas legal title to the automobile was still in his name; therefore, the postal inspectors were required to obtain his permission for a warrantless search. The Government contends that the mortgagee had lawful *possession* of the vehicle; therefore, permission of the mortgagee rendered the search lawful.

"The person in lawful possession of an automobile has authority to grant permission to search it. None of appellant's constitutional liberties were violated in the circumstances.

"See Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Parr v. United States, 255 F.2d 86 (5 Cir. 1958). * * *." Johnson v. United States, 358 F.2d 139, 140 (5th Cir. 1966).

We hold that the consent given by Mr. Nelson on behalf of Associated Mortgage and Investment Company was sufficient to make the search valid and constitutional.

### DEFENDANT'S MOTION FOR DISCOVERY

 Defendant claims that he was denied discovery as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The defendant timely moved not only for all police reports but also for any evidence which might

"* * * indicate the innocence of the defendant or any other information oral or physical that would point to the defendant's innocence or lead a jury to determine innocence.

"THE COURT: Do you have any evidence of that kind that would tend toward the innocence of the defendant, Mr. Dingledine?

"MR. DINGLEDINE: I believe the Court now is putting me in the position of a jury and I would say that only evidence I have tends toward his guilt not toward innocence.

* * * * * *

"* * * the defendant now specifically requests the police reports of all police officers who have not testified in this trial and who have been related to the gathering of evidence and putting together of the case against Larry Fassler. In that regard I specifically ask for the report of an Officer Reese. I specifically ask for the reports of any officers present or civilian employees of the police department present at the time the automobile which has been introduced in evidence in this case, State's Exhibit No. 3 in evidence was photographed and searched * * *."

The attorney for the defendant also moved for production of any report concerning undercover police work of the defendant. The motions were denied.

We have recognized the existence of a broad duty on the part of prosecutors to disclose evidence favorable to the defense under the landmark Supreme Court case of Brady v. Maryland, supra:

"* * * In Brady the Court held that 'suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' 373 U.S. at page 87, 83 S.Ct. at pages 1196–1197. * * *" State v. Altman, 107 Ariz. 93, 97, 482 P.2d 460, 464 (1971).

Further, we have held that the prosecution may be duty bound to disclose evidence favorable to the defendant whether or not the defendant requests it. State v. Fowler, 101 Ariz. 561, 422 P.2d 125 (1967); State v. Altman, supra.

In State Ex Rel. Corbin v. Superior Court, 103 Ariz. 465, 445 P.2d 441 (1968), we established guidelines to aid the courts when motions such as the one made here are interposed. Therein we said:

"* * * (1) The trial judge in his sound discretion must determine the reasonableness of a request for the exercise of his inherent power to grant discovery which request might merely be a disguised attempt at a 'fishing expedition' by the defense. (2) A superior court may not order production, before trial, of statements made by the prosecuting witness or others (not including the accused), for a defendant does not have a right to examine these statements prior to the time the witness has testified. See State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968); State v. Wallace, 97 Ariz. 296, 399 P.2d 909 (1965); State v. Saenz, 88 Ariz. 154, 353 P.2d 1026 (1960). The State is required to make available to the defense such statements only for the purpose of impeachment. (3) A superior court may not permit the defense to examine the work product of law enforcement authorities except upon a showing that either (a) the authorities have sought to subvert otherwise valid discovery by alleging the material is privileged under the work product exclusion, or (b) compelling and exceptional circumstances indicate to the court that

to deny discovery would materially prejudice the defendant in the preparation of his defense. Such compelling and exceptional circumstances might be shown where the material sought to be examined would bear on defendant's guilt or innocence, and would be crucial to a fair trial for the defendant, yet could not, with any degree of diligence, be obtained from sources other than the prosecution. * * * " 103 Ariz. at 468–469, 445 P.2d at 444.

We do not believe that the defendant in the instant case has shown the compelling and exceptional circumstances which would warrant our interference with the discretion of the trial court in denying the motions for discovery made by the defendant.

## ENTRAPMENT

■ The defendant urges on appeal that the trial court erred in refusing his instructions on entrapment, arguing that he had been induced to commit the offense by Captain Ralph McMillan of the State Liquor Control Board and arrested for that crime by another law enforcement branch.

While settling instructions, the defendant's attorney withdrew his requested entrapment instructions and asked only that a general instruction on the definition of entrapment be given. This request was denied.

While a party is entitled to an instruction reasonably supported by the evidence, State v. McKinney, 108 Ariz. 436, 501 P.2d 378 (1972), State v. Rabon, 100 Ariz. 344, 414 P.2d 726 (1966), State v. Martin, 106 Ariz. 227, 474 P.2d 818 (1970), we do not agree that the evidence in the record supported an entrapment instruction.

There is no evidence in the record to indicate that the police officers suggested that the defendant should transfer, sell, package, mail or ship marijuana. Fassler does claim that when he committed the prohibited acts he thought he was being of service to the authorities, but this is no indication that his actions were induced by the police authorities. An instruction on entrapment does not apply where it was the accused's own plan to assist the enforcement officers which led him to commit the crime charged:

> "This court has held that in order to be a valid claim of entrapment, there has to exist activity by the State in the nature of an inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient, State v. Duplain, 102 Ariz. 100, 425 P.2d 570. The criminal conduct must be the product of the creative activity of [the] law enforcement officials. State v. Rabon, 100 Ariz. 344, 414 P.2d 726." State v. Boccelli, 105 Ariz. 495, 497, 467 P.2d 740, 742 (1970).

## POLL OF THE JURY

■ The defendant next complains that the trial court erred in not permitting the jury to be polled as to whether it had read or heard of certain newspaper accounts published during the trial. In particular, the defendant complains of a story appearing in the Friday, 9 May 1969, edition of the Arizona Daily Star wherein Tucson Police Sergeant Bernal was quoted as terming Fassler "one of the biggest suppliers of narcotics in Arizona and parts of California."

The record indicates, however, that the trial court admonished the jury at the end of the first day of the trial not to read the newspapers or listen to any news broadcasts on radio or television. The jury was similarly admonished by the trial court on at least three other occasions prior to recesses and at the close of each day of hearing.

We agree with the Supreme Court of the State of Minnesota:

> "It was not error to deny defendant's repeated requests that the jury be polled to determine if they had read certain newspaper articles pertaining to the crime and the conduct of the trial. On several occasions the trial court cautioned the jurors not to read the newspapers.

* * * When a jury has been clearly admonished not to do a certain act, the mere opportunity to violate that admonition, without a vestige of proof of its violation, provides no basis upon which a court of review can find that the trial court has abused its discretion in refusing to investigate the jury for such possible misconduct. * * *" State v. De Zeler, 230 Minn. 39, 50, 41 N.W.2d 313, 320–321, 15 A.L.R.2d 1137 (1950).

There is no evidence or any indication at all that any juror read accounts of the trial during the trial and the record indicates that the jury was adequately cautioned against reading newspapers or listening to radio or television. Semler v. United States, 332 F.2d 6 (9th Cir. 1964). We hold, therefore, the trial judge did not abuse his discretion in refusing defendant's request to poll the jury.

### PRESENTENCE REPORT

■ Defendant's final contention is that he should have been granted access to the presentence report. State v. Pierce, 108 Ariz. 174, 494 P.2d 696 (1972) changed the established law in Arizona regarding the question of whether the presentence report should be made available to the defendant. We have held, however, that State v. Pierce, supra, is not to be applied retroactively. State v. Hubbard, 108 Ariz. 397, 499 P.2d 153 (1972).

### DEFENDANT'S PRO PER BRIEF

■ The defendant in this case, Larry Fassler, requested and was given permission by this court to submit a supplemental brief on his own behalf in propria persona. We have reviewed his supplemental brief and find that the defendant has reargued the issues presented by appointed counsel. These additional arguments, however, have been considered by the court.

Defendant Fassler in his supplemental brief filed "in propria persona" submitted certain factual matters not found in the record. Matters in criminal cases must be reviewed and decided solely on the record made in the trial court, State v. Cutting, 15 Ariz.App. 311, 488 P.2d 667 (1971), therefore the extraneous matters were disregarded in determining this case on appeal.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.